[2No. S087204. Apr. 16, 2001.]

WALTER M. BRENNAN, Plaintiff and Appellant, v.
TREMCO INCORPORATED et al., Defendants and Respondents.

**COUNSEL**

Grace & Sater, Michael K. Grace, Gregory J. Sater; Greenberg Glusker Fields Claman & Machtinger and Stephen S. Smith for Plaintiff and Appellant.

Brobeck, Phleger & Harrison, Lawrence J. Gornick, Edward D. Totino, Aaron P. Sonnhalter, Brett M. Schuman and Thomas M. Peterson for Defendants and Respondents.

**OPINION**

**CHIN, J.**—We granted review to decide whether a person may sue for the malicious prosecution of an action that the parties resolved through contractual arbitration. Because a contractual arbitration proceeding does not result in a favorable termination of a prior action, a necessary element of malicious prosecution, we conclude a person may not do so.

## I. THE FACTS AND PROCEDURAL HISTORY

In 1992, Tremco Incorporated (Tremco) sued a former employee, Walter M. Brennan, after he went to work for one of Tremco's competitors. The

complaint alleged breach of contract, conversion, misappropriation of trade secrets, intentional interference with prospective economic advantage, fraud, and unfair competition. Brennan obtained summary adjudication of some of the causes of action. Thereafter, in 1996, the parties agreed to arbitrate Tremco's remaining claims. The trial court orally summarized the agreement: "With regard to this particular matter, the parties have stipulated to a[d]judicate the matter by binding arbitration. That, of course, means a waiver of any trial de novo, also any right of appeal." A subsequent written agreement provided: "It is stipulated and agreed by the parties and their attorneys that trial by judge or jury is waived and the entire case will be submitted to Hon. G. Keith Wisot for final and binding decision from which there is no trial de novo or appeal." Ultimately, the arbitrator ruled in Brennan's favor on the remaining claims. The court confirmed the arbitration award and entered judgment in Brennan's favor.

Brennan then filed this action against Tremco and its attorneys for maliciously prosecuting the original action. He alleged that the original action had terminated completely in his favor. The attorneys settled the case and are no longer parties to this action. Tremco demurred. The trial court sustained the demurrer "without leave to amend based upon the fact that the underlying action was terminated by private arbitration and a malicious prosecution action cannot as a matter of law be based upon private arbitration. (*Sagonowsky v. More* (1998) 64 Cal.App.4th 122 [75 Cal.Rptr.2d 118].)" Brennan appealed, and the Court of Appeal reversed. We granted Tremco's petition for review.

## II. Discussion

■ "[I]n order to establish a cause of action for malicious prosecution of either a criminal or civil proceeding, a plaintiff must demonstrate 'that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations].' " (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 871 [254 Cal.Rptr. 336, 765 P.2d 498].) ■ We must decide whether the result of the arbitration proceeding was a favorable termination of a prior action that can give rise to an action for malicious prosecution.

Courts have decided that various proceedings may or may not give rise to a future malicious prosecution action, largely depending on their nature. (E.g., *Hardy v. Vial* (1957) 48 Cal.2d 577 [311 P.2d 494, 66 A.L.R.2d 739] [malicious prosecution action may be based on administrative proceeding]; *Camarena v. Sequoia Ins. Co.* (1987) 190 Cal.App.3d 1089 [235 Cal.Rptr. 820] [malicious prosecution action may be based on declaratory relief

action]; *Stanley v. Superior Court* (1982) 130 Cal.App.3d 460 [181 Cal.Rptr. 878] [malicious prosecution may be based on *judicial* arbitration proceeding]; *Pace v. Hillcrest Motor Co.* (1980) 101 Cal.App.3d 476 [161 Cal.Rptr. 662] [malicious prosecution may not be based on action in small claims court].) We now decide the question regarding contractual arbitration.

In sustaining the demurrer to the malicious prosecution action, the trial court cited *Sagonowsky v. More, supra,* 64 Cal.App.4th 122 (*Sagonowsky*). In *Sagonowsky,* the parties resolved a real estate dispute by contractual arbitration without judicial action. One party to the arbitration then sued the other party's attorney for maliciously prosecuting that arbitration. The Court of Appeal affirmed dismissal of the action. It held that a "private, contractual arbitration" is "not a 'prior action' of the sort which will support" a malicious prosecution claim. (*Id.* at p. 134.) *Sagonowsky* is not precisely on point. There, the underlying action began and ended in arbitration; here, it began in court and only ended in arbitration. But, as we explain, we conclude the *Sagonowsky* court was correct, and its rule also applies here. Whether the underlying action started in court or in arbitration, if it ends in contractual arbitration, that termination will not support a malicious prosecution action.

Two converging legal trends support this conclusion: (1) the trend against creating or expanding derivative tort remedies, including malicious prosecution; and (2) the trend in favor of allowing the parties voluntarily to choose binding, private arbitration to end the entire dispute.

Seeking to avoid "an unending roundelay of litigation" (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 214 [266 Cal.Rptr. 638, 786 P.2d 365]), we have cautioned against creating or expanding derivative tort remedies, at least when the underlying litigation provided adequate remedies. "In the past, we have favored remedying litigation-related misconduct by sanctions imposed within the underlying lawsuit rather than by creating new derivative torts." (*Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 8-9 [74 Cal.Rptr.2d 248, 954 P.2d 511]; see also *Temple Community Hospital v. Superior Court* (1999) 20 Cal.4th 464, 469-470 [84 Cal.Rptr.2d 852, 976 P.2d 223]; *id.* at p. 486 (dis. opn. of Kennard, J.); *Rubin v. Green* (1993) 4 Cal.4th 1187, 1199 [17 Cal.Rptr.2d 828, 847 P.2d 1044].) For these reasons, we have said that the tort of malicious prosecution "should not be expanded." (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 680 [34 Cal.Rptr.2d 386, 881 P.2d 1083].) "[T]he most promising remedy for excessive litigation does not lie in an expansion of malicious prosecution liability. . . . [I]n our view the better means of addressing the problem of unjustified litigation is through the adoption of measures facilitating the speedy resolution of the

initial lawsuit and authorizing the imposition of sanctions for frivolous or delaying conduct within that first action itself, rather than through an expansion of the opportunities for initiating one or more additional rounds of malicious prosecution litigation after the first action has been concluded." (*Sheldon Appel Co. v. Albert & Oliker, supra*, 47 Cal.3d at p. 873.)

A parallel development has been the increasing awareness that parties to litigation should be permitted to choose private arbitration as a means of resolving their dispute once and for all. "[P]rivate arbitration is a process in which parties voluntarily trade the safeguards and formalities of court litigation for an expeditious, sometimes roughshod means of resolving their dispute." (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 831 [88 Cal.Rptr.2d 366, 982 P.2d 229]; see also *id.* at pp. 843-844 (conc. & dis. opn. of Brown, J.) ["[T]he Legislature enacted the arbitration statutes in order to provide a viable alternative to the courts"].) When, as here, the parties choose private nonjudicial arbitration, they "typically expect ' "their dispute will be resolved without necessity for any contact with the courts." ' " (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 373 [36 Cal.Rptr.2d 581, 885 P.2d 994].) "This expectation of finality strongly informs the parties' choice of an arbitral forum over a judicial one. The arbitrator's decision should be the end, not the beginning, of the dispute." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 10 [10 Cal.Rptr.2d 183, 832 P.2d 899].)

The growing antipathy for litigation spawning litigation, together with the recognition that the parties who voluntarily choose arbitration generally expect and desire that the arbitration will end their dispute, convinces us that private arbitration should not be the basis for future malicious prosecution actions. The arbitration agreement may allow for the imposition of sanctions for bringing a frivolous action. (*David v. Abergel* (1996) 46 Cal.App.4th 1281, 1283-1284 [54 Cal.Rptr.2d 443] [noting that the actual agreement determines the arbitrator's powers].) The arbitrator here did not impose sanctions, and the parties dispute whether the actual agreement of this case permitted him to do so. We need not decide that question, for the important point is that the parties at least *could have* provided for the imposition of sanctions when agreeing to use arbitration as a means of finally ending the dispute.

Brennan relies substantially on *Stanley v. Superior Court, supra*, 130 Cal.App.3d 460, which permitted a malicious prosecution action based on *judicial* arbitration. We agree with the *Sagonowsky* court that judicial arbitration and private contractual arbitration are sufficiently different that the result here should be different: "Nor are we persuaded that the rule which permits judicial arbitrations to be the basis for a malicious prosecution claim

requires the same result in a contractual arbitration. (*Stanley* v. *Superior Court, supra,* 130 Cal.App.3d at p. 472.) Judicial arbitration is fundamentally unlike private contractual arbitration. . . . [T]he outcome of a judicial arbitration proceeding is not a final resolution of the dispute to which the parties have agreed to bind themselves; any party can request trial de novo. (Code Civ. Proc., § 1141.20.) The judicial arbitration procedure has been likened to 'a minitrial that is in effect a continuation of the settlement negotiation process' which results in 'a neutral view from an authoritative figure' of the merits of the claim and thus gives impetus to settlement. (*Stanley* v. *Superior Court, supra,* 130 Cal.App.3d 460, 471.) The crucial difference between the two types of arbitration is that a judicial arbitration does not arise from an agreement to arbitrate entered into by the parties, but is mandated by the Legislature as to certain civil cases filed in court.

"Thus, like a voluntary dismissal, a judicial arbitration award in favor of defendant reflects a decision on the lack of merit of a claim which was brought originally to court. Permitting such terminations to support a claim of malicious prosecution furthers the public purpose underlying the cause of action—namely to discourage abuse of the judicial system by the bringing of maliciously motivated but baseless claims. (See *Crowley* v. *Katleman, supra,* 8 Cal.4th at p. 693.) That purpose would not be directly served by permitting malicious prosecution based on a private, contractual arbitration. Indeed, the likely impact on the courts of allowing such claims would be both to increase litigation and to undermine the finality of dispute resolution to which the parties agreed." (*Sagonowsky, supra,* 64 Cal.App.4th at pp. 131-132.)

For these purposes, contractual arbitration is closer to small claims litigation than judicial arbitration. ■ After considering its "purpose and nature," one court held that the small claims process may not support a malicious prosecution action. (*Pace* v. *Hillcrest Motor Co., supra,* 101 Cal.App.3d at p. 478.) The court noted that "the small claims process is designed to function quickly and informally." (*Id.* at p. 479.) "To permit an action for malicious prosecution to be grounded on a small claims proceeding would frustrate the intent of the Legislature in adopting an expeditious and informal means of resolving small disputes, [and] would inject into a simple and accessible proceeding elements of time, expense, and complexity which the small claims process was established to avoid . . . ." (*Ibid.*) ■ Similarly, to permit an action for malicious prosecution to follow contractual arbitration would defeat the purpose of that arbitration. As we have noted, contractual arbitration is a relatively quick and inexpensive, but necessarily somewhat "roughshod," procedure that the parties may voluntarily choose to resolve their dispute and avoid further recourse to the courts. (*Vandenberg* v. *Superior Court, supra,* 21 Cal.4th at p. 831.) The parties

accept the bad with the good. But such arbitration is not the sort of proceeding on which a malicious prosecution action should be based.

Moreover, the nature of private arbitration does not always allow for a ready determination of whether or why the prior action actually terminated in the malicious prosecution plaintiff's favor. Except for statutory claims (see *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 107 [99 Cal.Rptr.2d 745, 6 P.3d 669]), an arbitrator need not explain the basis of an award. The arbitrator's decision is also generally nonreviewable. (*Moncharsh v. Heily & Blase, supra,* 3 Cal.4th at pp. 27-28.) All of these circumstances convince us that an action terminated in contractual arbitration, like a small claims action, should not give rise to a malicious prosecution action.

Brennan finds support in the recent decision of *Rogers v. Peinado* (2000) 85 Cal.App.4th 1 [101 Cal.Rptr.2d 817]. That case, like *Sago-nowsky, supra,* 64 Cal.App.4th 122, commenced with contractual arbitration. During the arbitration, one party filed a counterclaim against the original claimant. After the arbitration ended, the original claimant sued the other party and that party's attorneys for maliciously prosecuting the counterclaim. The *Rogers* court found that the plaintiff could not sue the *party* to the arbitration. However, expressly disagreeing with *Sagonowsky,* the court also concluded that the plaintiff could sue the *attorneys* for maliciously prosecuting the counterclaim because they were not parties to the arbitration agreement. (*Rogers, supra,* 85 Cal.App.4th at pp. 9-11.) We disagree. As we have explained, it is the *nature* of the termination that matters, not exactly how it came about or who agreed to it. A termination by contractual arbitration is simply not the sort of favorable termination needed to support a malicious prosecution action. We disapprove *Rogers v. Peinado, supra,* 85 Cal.App.4th 1, to the extent it is inconsistent with this opinion.

Brennan also argues that our decision in *Moore v. Conliffe* (1994) 7 Cal.4th 634 [29 Cal.Rptr.2d 152, 871 P.2d 204] supports his position. There, we held that the litigation privilege of Civil Code section 47, subdivision (b) applies to private contractual arbitration, which we described as quasi-judicial for purposes of the privilege. (See 7 Cal.4th at p. 645.) However, we reasoned that contractual arbitration should not lead to additional litigation in the courts. We stated that private contractual arbitration "is designed to serve a function analogous to—and *typically to eliminate the need to resort to*—the court system . . . ." (*Id.* at p. 643, italics added.) We found the privilege necessary to "protect[] the integrity and finality of dispute resolution from 'an unending roundelay of litigation,'" and reiterated that finality of decision is "a principal impetus" for the parties to choose arbitration. (*Id.* at p. 644.) This reasoning supports our conclusion that contractual arbitration should not give rise to a malicious prosecution action.

The Court of Appeal in this case concluded that "it is the intent of the parties that controls the issue of whether, in agreeing to submit a matter to private arbitration, the parties intended to preclude a successful defendant from pursuing a claim for malicious prosecution." To resolve this question, the court held, "the trier of fact will be required to hear evidence concerning the parties' intent when they stipulated to private arbitration in open court and later in writing." This procedure would be impractical. Because the arbitration agreement was silent, we may assume the parties reached no agreement. When no agreement exists, the parties may well have had quite different intents. It requires little imagination to suspect that in a case like this, the malicious prosecution plaintiff might claim an intent to *allow* a malicious prosecution action, and the defendant might claim an intent to *preclude* such an action. Both sides may be credible regarding what each intended. Moreover, even if the court could discern a mutual intent, the need for a hearing would add yet another round to the spiral of litigation. Instead of ending the dispute, the arbitration would force another hearing on whether it precluded a malicious prosecution action. Arbitration should not itself create new arenas for litigation.

Finally, noting that *Sagonowsky, supra,* 64 Cal.App.4th 122, was decided after his arbitration, Brennan argues that any ruling against his position should be prospective only and not apply to him. We disagree. ■ "The general rule that judicial decisions are given retroactive effect is basic in our legal tradition." (*Newman v. Emerson Radio Corp.* (1989) 48 Cal.3d 973, 978 [258 Cal.Rptr. 592, 772 P.2d 1059].) Courts sometimes make an exception to this general rule when the decision changed a settled rule on which the parties had relied. (*Droeger v. Friedman, Sloan & Ross* (1991) 54 Cal.3d 26, 45 [283 Cal.Rptr. 584, 812 P.2d 931].) But in this case, we are merely deciding a legal question, not changing a previously settled rule. As discussed above, *Stanley v. Superior Court, supra,* 130 Cal.App.3d 460, does not control this case. We have not overruled *any* decision predating the arbitration, much less a prior decision of this court. (Cf. *Droeger v. Friedman, Sloan & Ross, supra,* 54 Cal.3d at pp. 45-46.) We have certainly not disapproved "of a long-standing and widespread practice expressly approved by a near-unanimous body of lower court authorities." (*Id.* at p. 45.) ■ No reason appears not to apply today's decision to this case.

### III. Conclusion

We reverse the judgment of the Court of Appeal and remand the matter for that court to decide any remaining issues consistent with our opinion.

Kennard, J., Baxter, J., and Brown, J., concurred.

**MOSK, J.**—I dissent.

In 1992, Tremco Incorporated brought an action in the superior court against Walter M. Brennan, a former employee who went to work for one of its competitors, for breach of contract, for the torts of conversion, misappropriation of trade secrets, intentional interference with prospective economic advantage, fraud, and unfair competition, and, later, for declaratory relief—an action entitled *Tremco v. Brennan.* For the claims other than that for declaratory relief, Tremco sought both compensatory and punitive damages in an unspecified amount. Tremco was represented by counsel; Brennan was represented as well.

In 1993, Tremco dismissed its claim for fraud without prejudice.

Later in 1993, the superior court ordered Tremco and Brennan to judicial arbitration. The arbitrator resolved all of the then remaining claims in Brennan's favor. He then made an arbitration award accordingly. Tremco demanded a trial de novo.

In 1995, the superior court summarily adjudicated Tremco's claims for conversion and misappropriation of trade secrets in Brennan's favor.

In 1996, Tremco and Brennan entered into an arbitration agreement. As recited, in pertinent part, by the superior court on the record and in open court: "With regard to this particular matter, the parties have stipulated to a[d]judicate the matter by binding arbitration. That, of course, means a waiver of any trial de novo, also any right of appeal." As subsequently reduced, in its entirety, to written form by Tremco and Brennan themselves: "It is stipulated and agreed by the parties and their attorneys that trial by judge or jury is waived and the entire case will be submitted to" a specified retired superior court judge "for final and binding decision from which there is no trial de novo or appeal." In the course of the arbitration, which was generally conducted as though in superior court, Tremco and Brennan contended solely about the last of Tremco's remaining claims, for breach of contract, intentional interference with prospective economic advantage, unfair competition, and declaratory relief. In findings of fact and conclusions of law, the arbitrator determined that the evidence that Tremco offered to present would be legally insufficient to support a judgment. He therefore resolved the claims in Brennan's favor. He then made an arbitration award accordingly. The superior court confirmed the arbitration award and rendered judgment for Brennan.

In 1997, Brennan brought the present action in the superior court against Tremco and its former attorneys for the tort of malicious prosecution with

respect to *Tremco v. Brennan*. Tremco's former attorneys soon paid Brennan $40,000 in settlement, and were dismissed.

In 1998, relying on the just-decided case of *Sagonowsky v. More* (1998) 64 Cal.App.4th 122 [75 Cal.Rptr.2d 118], Tremco demurred on the ground that *Tremco v. Brennan* incorporated arbitration as its terminating mechanism. Relying itself on *Sagonowsky*, the superior court sustained Tremco's demurrer without leave to amend. It rendered judgment for Tremco.

Brennan appealed. The Court of Appeal reversed the superior court's judgment by a judgment of its own.

Tremco petitioned for review. We granted its application.

The majority now proceed to reverse the Court of Appeal's judgment. I would affirm.

I

The tort of malicious prosecution is committed whenever a prior action is brought with malice and without probable cause by the plaintiff, and is subsequently terminated in favor of the defendant. (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 676 [34 Cal.Rptr.2d 386, 881 P.2d 1083]; *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 871-872 [254 Cal.Rptr. 336, 765 P.2d 498]; *Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 50 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878].)

The availability of an action for malicious prosecution is justified by the harm that the underlying misconduct inflicts. (See *Crowley v. Katleman, supra,* 8 Cal.4th at p. 677; *Bertero v. National General Corp., supra,* 13 Cal.3d at pp. 50-51.)

A malicious prosecution harms the individual who is the defendant in the action. (*Crowley v. Katleman, supra,* 8 Cal.4th at p. 677; *Bertero v. National General Corp., supra,* 13 Cal.3d at p. 50.) It "compel[s]" him "to defend against a fabricated claim." (*Bertero v. National General Corp., supra,* 13 Cal.3d at p. 50.) It thereby forces him to incur the "cost of defen[se]," including "attorney's fees." (*Id.* at p. 51.) It "subjects him to the panoply of psychological pressures most . . . defendants suffer," resulting in "mental or emotional distress." (*Id.* at pp. 50-51.) But it also "subjects him . . . to the additional stress of attempting to resist a suit commenced out of spite or ill will, often magnified by slanderous allegations in the pleadings," resulting in "injury to his reputation or impairment of his social and business standing in the community." (*Ibid.*)

In addition, a malicious prosecution harms the court that entertained the action. (*Crowley v. Katleman, supra,* 8 Cal.4th at p. 677; *Bertero v. National General Corp., supra,* 13 Cal.3d at p. 50.) It hampers the "efficient administration of justice." (*Bertero v. National General Corp., supra,* 13 Cal.3d at p. 50; accord, *Crowley v. Katleman, supra,* 8 Cal.4th at p. 677.) It "clog[s] . . . already crowded dockets . . . ." (*Bertero v. National General Corp., supra,* 13 Cal.3d at p. 51.) It also allows "individuals" to engage in the "unscrupulous use of the courts" " 'as instruments with which to maliciously injure their fellow men.' " (*Ibid.*)

A plaintiff can survive a defendant's demurrer in an action for malicious prosecution if he pleads that a prior action was brought by the defendant, then a plaintiff, with malice and without probable cause, and was subsequently terminated in favor of the plaintiff, then a defendant. (See *Crowley v. Katleman, supra,* 8 Cal.4th at p. 676; *Bertero v. National General Corp., supra,* 13 Cal.3d at pp. 50-51.)

In my view, Brennan should have survived Tremco's demurrer in the present action for malicious prosecution with respect to *Tremco v. Brennan.* He effectively alleged that *Tremco v. Brennan* was brought by Tremco with malice and without probable cause, and was subsequently terminated in his favor. In the absence of arbitration, the point would be beyond dispute. In its presence, it is hardly otherwise. The arbitration was incorporated in *Tremco v. Brennan* as its terminating mechanism. Certainly, the arbitration did not preclude harm to Brennan himself arising from *Tremco v. Brennan*—over almost four years, he incurred the cost of defense, undoubtedly experienced mental and emotional distress, and likely suffered injury to his reputation and standing in the community, facing as he did claims including conversion, misappropriation of trade secrets, and fraud. Just as certainly, the arbitration did not preclude harm to society generally arising from *Tremco v. Brennan*—over the same period, the superior court was hampered in the efficient administration of justice, both through the clogging of its already notoriously crowded dockets and also through the misuse of its resources by Tremco.

In arriving at my conclusion, I do not ignore the arbitration agreement in *Tremco v. Brennan.* What Tremco and Brennan agreed to arbitrate was referred to by the superior court as "this particular matter," and by the parties themselves as the "entire case." Which meant—to judge from what Tremco and Brennan in fact arbitrated—the last of Tremco's remaining claims, *and those claims alone.* Whatever else may be said of the arbitration agreement, it can hardly be read to encompass any claim by Brennan against Tremco for the malicious prosecution of *Tremco v. Brennan.* No such claim

had yet arisen inasmuch as *Tremco v. Brennan*, in advance of the superior court's judgment therein, had not yet become a *prior* action. This is not to say that the scope of the arbitration agreement *could not possibly* embrace any such future claim—only that it *did not actually* do so.

Consistent with my conclusion is *Stanley v. Superior Court* (1982) 130 Cal.App.3d 460 [181 Cal.Rptr. 878].

In *Stanley*, the court held that an action for malicious prosecution may be based on a prior action *incorporating judicial arbitration as its terminating mechanism.* Generally, an action for malicious prosecution may be based on *any* prior action, including, as there, one in municipal court. There is no exception for a prior action *incorporating judicial arbitration as its terminating mechanism.* In view of the harms to individual and society that justify the availability of a malicious prosecution action, it should matter greatly *that* the prior action was brought by the then plaintiff with malice and without probable cause, and was subsequently terminated in favor of the then defendant. But "[i]t should matter little" *how* the prior action was terminated in favor of the then defendant, "whether . . . by a judgment after [judicial] arbitration award," as opposed, for example, to a "judgment after trial." (*Stanley v. Superior Court, supra*, 130 Cal.App.3d at p. 469.) The fact of termination is indeed crucial. The "particular type of termination" is not. (*Id.* at p. 467, italics omitted.) If the harms in question eventuate, they eventuate. The means of termination has no effect on their existence.

*Stanley* supports my conclusion that an action for malicious prosecution may be based on a prior action in superior court, like *Tremco v. Brennan*, incorporating arbitration as its terminating mechanism. In view of the harms to individual and society that justify the availability of a malicious prosecution action, it does not matter that the prior action was entertained in superior court, where those harms were likely to be greater, rather than municipal court, where they were likely to be lesser. Neither does it matter that the prior action was terminated in favor of the then defendant by a judgment after arbitration award as opposed to a judgment after judicial arbitration award: Although the fact of termination is crucial, the particular type is not.

Not inconsistent with my conclusion is *Pace v. Hillcrest Motor Co.* (1980) 101 Cal.App.3d 476 [161 Cal.Rptr. 662]. It is, rather, distinguishable.

In *Pace*, the court held, for "reasons" of "policy" (*Stanley v. Superior Court, supra*, 130 Cal.App.3d at p. 466), that an action for malicious prosecution may not be based on a prior action *in small claims court.* The

"small claims process was established [by the Legislature] to provide an inexpensive and expeditious means to settle disputes over small amounts. The theory behind its organization was that ordinary litigation 'fails to bring practical justice' when the disputed claim is small, because the time and expense required by the ordinary litigation process is so disproportionate to the amount involved that it discourages legal resolution of the dispute. . . . As a result the small claims process is designed to function quickly and informally. There are no attorneys . . . , no pleadings . . . , no legal rules of evidence . . . , no juries, and no formal findings. . . . The judge may informally investigate the controversy and 'give judgment and make such orders as to time of payment or otherwise as he deems to be just and equitable for disposition of the controversy.' . . . Consequently, 'the awards—although made in accordance with substantive law—are often based on the application of common sense; and the spirit of compromise and conciliation attends the proceedings.' " (*Pace v. Hillcrest Motor Co., supra,* 101 Cal.App.3d at pp. 478-479, citations omitted.) "To permit an action for malicious prosecution to be grounded on a small claims proceeding would frustrate the intent of the Legislature in adopting an expeditious and informal means of resolving small disputes, would inject into a simple and accessible proceeding elements of time, expense, and complexity which the small claims process was established to avoid, and would require a prudent claimant to consult with an attorney before making use of this supposedly attorney-free method for settling disputes over small amounts." (*Id.* at p. 479.)

*Pace* does *not* support any conclusion that an action for malicious prosecution may not be based on a prior action in superior court, like *Tremco v. Brennan,* incorporating arbitration as its terminating mechanism. First, an action in small claims court necessarily involves a dispute over an amount that is "small" (*Pace v. Hillcrest Motor Co., supra,* 101 Cal.App.3d at p. 478); an action in superior court necessarily involves a dispute over an amount that is *not* small, even when, as here, it incorporates arbitration for termination. Second, an action in small claims court operates as a dispute-resolution mechanism that is both "inexpensive and expeditious" (*ibid.*); an action in superior court operates as a dispute-resolution mechanism that is otherwise, even when, as here, it incorporates arbitration for termination. Third, an action in small claims court proceeds both "quickly and informally" (*id.* at p. 479); an action in superior court proceeds otherwise, even when, as here, it incorporates arbitration for termination. Fourth, an action in small claims court can have "no attorneys," "no pleadings," "no legal rules of evidence," "no jur[y]," and "no formal findings" (*ibid.*); an action in superior court can have all, even when, as here, it incorporates arbitration for termination.

Neither is *Sagonowsky* itself inconsistent with my conclusion. It too is distinguishable.

In *Sagonowsky*, the court held that an action for malicious prosecution may not be based on arbitration outside of any prior action. Under *Stanley*, an action for malicious prosecution may be based on a prior action incorporating judicial arbitration as its terminating mechanism. That is because a prior action of this sort inflicts the harms to individual and society that justify the availability of a malicious prosecution action. It does not follow that an action for malicious prosecution may be based on arbitration outside of any prior action. That is because arbitration does not itself inflict such harms, at least not appreciably. It is the "public policy" of this state to "favor[] . . . arbitration" "as a means of dispute resolution which is both 'speedy and relatively inexpensive.'" (*Sagonowsky v. More, supra,* 64 Cal.App.4th at p. 133, italics omitted.) "[P]arties who agree . . . for whatever reason to stay out of the courts" must be "permit[ted] . . . to do so," even if one subsequently changes his mind. (*Ibid.*)

*Sagonowsky* does *not* support any conclusion that an action for malicious prosecution may not be based on a prior action in superior court, like *Tremco v. Brennan,* incorporating arbitration as its terminating mechanism. The arbitration there existed outside of any action. As such, it arguably did not inflict the harms to society and individual that justify the availability of a malicious prosecution action, at least not appreciably. The arbitration here was incorporated in *Tremco v. Brennan* as its terminating mechanism. Even if the arbitration itself, in theoretical isolation, did not appreciably inflict such harms, *Tremco v. Brennan,* from which it cannot practically be isolated, surely did. Likewise, even if the arbitration itself, in theoretical isolation, was both speedy and relatively inexpensive, *Tremco v. Brennan,* from which it cannot practically be isolated, surely was neither. True, Tremco and Brennan entered into an arbitration agreement. But they did not agree *generally* to *stay* out of court, even as to any not-yet-arisen claim by Brennan against Tremco for malicious prosecution of the not-yet-prior action of *Tremco v. Brennan.* Rather, they agreed *specifically* to *get* out of court as to the last of Tremco's remaining claims.

## II

The majority hold, to the contrary, that an action for malicious prosecution may *not* be based on a prior action incorporating arbitration as its terminating mechanism.

In support, the majority state that a prior action incorporating arbitration as its terminating mechanism "does not result in a favorable termination" for

the plaintiff in the malicious prosecution action. (Maj. opn., *ante*, at p. 312.) Curiously so, inasmuch as the prior action with which we are here concerned, if none other, did in fact result in a favorable termination for the plaintiff in the malicious prosecution action, indeed a very favorable termination, taking the form of what was essentially a judgment of nonsuit. The majority admit as much. The assertion that arbitration "does not always allow for a ready determination of whether or why the prior action actually terminated in the malicious prosecution plaintiff's favor" (*id.* at p. 317) is, of course, pure makeweight. Litigation does not always allow for any readier determination. (See, e.g., *Sagonowsky v. More, supra,* 64 Cal.App.4th at pp. 128-129.)

The majority imply that a prior action incorporating arbitration as its terminating mechanism assumes an arbitration agreement under which the parties have chosen to get out of court, and thereby justifies a judicially declared rule under which they are barred from coming back in. The assumption is sound. The justification is not. Even if it were, it would hardly extend to persons other than those who have entered into the arbitration agreement. The assertion that "it is the *nature* of" arbitration as the terminating mechanism "that matters" (maj. opn., *ante,* at p. 317) altogether ignores the fact that its nature is defined by the arbitration agreement itself, which does not bind those who are strangers to its terms. It is true that those who have entered into the arbitration agreement must "accept the bad with the good." (*Ibid.*) But no one else.

The majority finally make plain that a prior action incorporating arbitration as its terminating mechanism does not result in a favorable termination for the plaintiff in the malicious prosecution action *of the "sort . . . needed to support"* such an action. (Maj. opn., *ante,* at p. 317, italics added.) That is ipse dixit, nothing less, nothing more.

If I were inclined to join the majority in holding that an action for malicious prosecution may not be based on a prior action incorporating arbitration as its terminating mechanism, I would so hold only prospectively, in the context of arbitration pursuant to an arbitration agreement entered into on or after finality of any decision herein. The majority effectively declare for the first time that silence equals forfeiture: If an arbitration agreement does not cover a claim for malicious prosecution, the right to bring an action based thereon is lost. If the claim's holder had notice of such a declaration, he might fairly be compelled to comply. But persons like Brennan had no such notice. Tremco's conduct proves the point: It did not demur until after *Sagonowsky* was decided. The conduct of Tremco's former attorneys proves it even more forcefully: They paid Brennan $40,000 in settlement of a claim

that, we are now told, Brennan had already forfeited. Perhaps the majority have not "changed" any "rule" on which Brennan might have "relied." (Maj. opn., *ante*, at p. 318.) But they have surely created one that he could not have anticipated. Fairness demands that it not be applied to his detriment.

### III

For the reasons stated above, I would affirm the judgment of the Court of Appeal.

George, C. J., and Werdegar, J., concurred.