126 Cal.Rptr.2d 431 (2002)
103 Cal.App.4th 83
CASA HERRERA, INC., Plaintiff and Appellant,
v.
Nasser BEYDOUN et al., Defendants and Respondents.
No. D038326.
Court of Appeal, Fourth District, Division One.
October 28, 2002.
Review Granted January 22, 2003.
*432 Meisenheimer, Herron & Steele, Matthew V. Herron and Robert M. Steele, San Diego, for Plaintiff and Appellant.
Gibson, Dunn & Crutcher, Nicola T. Hanna and Michele L. Maryott, Irvine, for Defendants and Respondents Community First National Bank and Tom Ferrara.
Ira S. Carlin, Escondido, for Defendants and Respondents Nasser Beydoun and Am Mex Food Industries, Inc.
McDonald, J.
Appellant Casa Herrera, Inc. (Casa Herrera) prevailed at trial in an underlying lawsuit brought against it by respondents Am Mex Food Industries, Inc. (Am Mex) and Nasser Beydoun (Beydoun). On appeal from judgment in the underlying lawsuit, this court in an unpublished opinion affirmed the judgment in favor of Casa Herrera, concluding that the parol evidence rule precluded Am Mex and Beydoun from establishing their claims against Casa Herrera for breach of contract and fraud in connection with Casa Herrera's sale of a tortilla oven to Am Mex. This court also affirmed an award of attorney fees in favor of Casa Herrera against Am Mex and Beydoun. (Beydoun v. Casa Herrera (Jan. 10, 2000, D030061) [nonpub. opn.])
Casa Herrera then filed the current action pleading malicious prosecution claims against Am Mex and Beydoun, and a separate malicious prosecution claim against respondents Community First National Bank and Tom Ferrara (collectively Bank), which alleged Bank instigated and encouraged the filing and continuation of the underlying action. Casa Herrera's complaint also pleaded a claim against Bank under Code of Civil Procedure section 1908, subdivision (b) (Section 1908), alleging that although Bank was not a party in the underlying action, because it had a proprietary and financial interest in the judgment and controlled the underlying action, Bank was bound by the judgment and was liable to pay all costs and attorney fees awarded to Casa Herrera by the judgment.
The trial court, relying on Hall v. Harker (1999) 69 Cal.App.4th 836, 82 Cal. *433 Rptr.2d 44 (Hall), granted Am Mex, Beydoun and Bank's motion for judgment on the pleadings on Casa Herrera's malicious prosecution claims. The trial court ruled that, under Hall, a termination of a lawsuit based on the parol evidence rule as a matter of law is not a favorable termination of the underlying action, thereby precluding Casa Herrera from establishing an essential element of its malicious prosecution claims. The trial court also granted Bank's motion for judgment on the pleadings on Casa Herrera's Section 1908 claim on the ground that Section 1908 did not impose liability on nonparties for awards of costs and attorney fees. Casa Herrera appeals the judgment dismissing the current action.
We hold that Casa Herrera's malicious prosecution claims should not have been dismissed because we conclude, contrary to Hall, that a defendant exonerated from liability in the underlying action based on the parol evidence rule has obtained a favorable termination on the merits. However, we hold the trial court correctly dismissed Casa Herrera's Section 1908 claim.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. Facts Giving Rise to Underlying Action

In 1994 Am Mex, owned by Beydoun, purchased a tortilla oven and related equipment from Casa Herrera that Am Mex intended to use to manufacture tortillas for sale to its distributors; Beydoun guaranteed a loan to pay the purchase price. The written contract contained several warranties, including a warranty that the oven would produce tortillas at certain rates.[1] The oven was delivered to Am Mex on June 10, 1994. The contract provided that after installation Am Mex had 10 days to operate the oven and to return it if not satisfied with its operation. Am Mex did not sign the written acceptance of the oven for more than a month because it was having difficulty satisfactorily operating the oven; Casa Herrera made some repairs and advised Am Mex on how to properly operate the oven. On July 22, 1994, after Casa Herrera and Am Mex personnel monitored the oven for several shifts, Am Mex signed the written acceptance acknowledging they had observed the oven in operation and were satisfied with the quantity and quality of production.[2] (Beydoun v. Casa Herrera, supra, D030061.)
Am Mex encountered financial difficulties and was unable to service its debts to Valley De Oro Bank, the predecessor to Bank, and in 1996 Valley De Oro Bank filed a lawsuit to enforce the security interest it held in Am Mex's assets and obtained an order appointing a receiver to *434 take control of Am Mex's assets.[3] After the receiver was appointed, Am Mex and Beydoun filed the underlying action against Casa Herrera alleging breach of contract and fraud in connection with the sale of the oven. Am Mex's claims relied on its assertions that Casa Herrera promised and represented the oven would produce 16-ounce tortillas at the rate of 1500 dozen per hour, Casa Herrera knew the oven could not maintain that rate of production, and the oven's inability to produce tortillas of that size at that rate caused Am Mex's financial downfall.[4] (Beydoun v. Casa Herrera, supra, D030061.)

B. The Underlying Judgment

The trial court granted Casa Herrera's motion for nonsuit against Beydoun and, after hearing additional evidence, also granted Casa Herrera's motion for nonsuit against Am Mex, reasoning that neither Beydoun nor Am Mex had standing to sue for fraud or breach of contract. On appeal, this court affirmed the ruling but did not reach the issue of standing. Instead, this court concluded there was insufficient evidence to support the breach of contract or fraud claims because the written contract obligated Casa Herrera to provide an oven producing 10-ounce tortillas at the rate of 1500 dozen per hour, and the parol evidence rule barred Am Mex from attempting to show Casa Herrera breached a promise (or fraudulently promised) to provide an oven producing 16-ounce tortillas at the rate of 1500 dozen per hour. (Beydoun v. Casa Herrera, supra, D030061.)

C. The Current Action and Rulings

Casa Herrera filed this action alleging all of the elements required for its malicious prosecution claims against Am Mex, Beydoun and Bank, including the allegation that the appellate opinion in Beydoun v. Casa Herrera, supra, D030061, was a favorable termination of the underlying action.[5] Bank, joined by Am Mex and Beydoun, moved for judgment on the pleadings. They argued that, under Hall, when the plaintiff in the underlying action was unable to establish his claim because the parol evidence rule barred him from introducing evidence to support his claim, the termination in favor of the underlying defendant does not qualify as a favorable termination; the defense judgment is considered based on procedural or technical factors rather than a substantive termination on the merits of the claim. Casa Herrera opposed the motion. The trial court ruled that, under Hall, the *435 opinion in Beydoun v. Casa Herrera, supra, D030061, as a matter of law precluded Casa Herrera from showing the favorable termination element of a malicious prosecution action.
Casa Herrera's claim under Section 1908 alleged that because Bank had a proprietary and financial interest in the judgment and controlled the underlying action, Bank was bound by the judgment and liable to pay all costs and attorney fees awarded to Casa Herrera by the judgment. Bank filed a motion for judgment on the pleadings, arguing Section 1908 merely codified the common law rules of res judicata and did not provide authority to add it as an additional judgment debtor on the judgment. Casa Herrera opposed the motion, arguing that Section 1908, subdivision (b) expressly allows a court to enter a judgment against a nonparty. The trial court rejected Casa Herrera's interpretation of Section 1908, subdivision (b), granted Bank's motion for judgment on the pleadings, and entered judgment against Casa Herrera.

II

ANALYSIS

A. Termination Based on the Parol Evidence Rule is a Favorable Termination

The trial court, recognizing the binding effect of Hall (see Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455, 20 Cal.Rptr. 321, 369 P.2d 937), ruled the judgment in the underlying action was not a favorable termination for purposes of a malicious prosecution action because it was based on the parol evidence rule. However, we conclude Hall's holding was incorrect and should not be perpetuated.

The Favorable Termination Element
A termination of the underlying action in the defendant's favor, although required, is not alone sufficient to satisfy the favorable termination element required for a malicious prosecution action. (Hall, supra, 69 Cal.App.4th at pp. 843-844, 82 Cal.Rptr.2d 44.) Although "[i]t is not essential to maintenance of an action for malicious prosecution that the prior proceeding was favorably terminated following trial on the merits[,][the] termination must reflect on the merits of the underlying action." (Lackner v. LaCroix (1979) 25 Cal.3d 747, 750, 159 Cal.Rptr. 693, 602 P.2d 393 [original italics].) Lackner explained that "[i]f the termination does not relate to the meritsreflecting on neither innocence of nor responsibility for the alleged misconductthe termination is not favorable in the sense it would support a subsequent action for malicious prosecution." (Lackner, at p. 751, 159 Cal.Rptr. 693, 602 P.2d 393, fn. omitted.) Lackner ultimately held a termination based on the statute of limitations "must be deemed a technical or procedural as distinguished from a substantive termination" that "is in no way dependent on nor reflective of the meritsor lack thereofin the underlying action" and therefore would not qualify as a favorable termination. (Id at pp. 751-752, 159 Cal.Rptr. 693, 602 P.2d 393.) Other courts have concluded that other grounds for terminating the underlying action in favor of the defendant are also not favorable and do not support a subsequent action for malicious prosecution. (See Asia Investment Co. v. Borowski (1982) 133 Cal.App.3d 832, 837-839, 184 Cal.Rptr. 317 [dismissal of underlying action based on laches not favorable termination]; Haight v. Handweiler (1988) 199 Cal. App.3d 85, 88-90, 244 Cal.Rptr. 488 [dismissal of underlying action against nonsettling defendant when required as condition of settlement between other parties not *436 favorable termination]; Oprian v. Goldrich, Kest & Associates (1990) 220 Cal. App.3d 337, 344-345, 269 Cal.Rptr. 429 [dismissal of complaint to avoid additional costs of litigation not favorable termination].)
In contrast, a termination will be deemed favorable when the action is terminated for reasons that do reflect on the defendant's innocence of or lack of responsibility for the alleged misconduct. (See, e.g., Jage v. Stone (1941) 18 Cal.2d 146, 149-152, 114 P.2d 335 [dismissal of criminal action by magistrate for lack of probable cause is favorable termination]; Minasian v. Sapse (1978) 80 Cal.App.3d 823, 827, 145 Cal.Rptr. 829 [dismissal for failure to prosecute is favorable termination because "one does not simply abandon a meritorious action once instituted"].) In Berman v. RCA Auto Corp. (1986) 177 Cal.App.3d 321, 222 Cal.Rptr. 877, the court examined whether a termination in favor of the defendant based on the immunity conferred by former Civil Code section 47, subdivision (2) was a favorable termination for purposes of a subsequent malicious prosecution action. In the underlying action, RCA sued several defendants and Berman, attorney for one of the defendants, made certain representations to the court while defending his client. RCA claimed Berman's representations were false and therefore amended its underlying complaint to add Berman as a defendant, alleging Berman's false statements had injured RCA. The trial court in the underlying action dismissed the claim against Berman because his statements were absolutely privileged under former Civil Code section 47, subdivision (2). (Berman, at pp. 322-323, 222 Cal.Rptr. 877.)
Berman then filed a malicious prosecution claim against RCA. The trial court dismissed Berman's claim because it concluded dismissal of the underlying claim based on privilege cannot satisfy the favorable termination element. On appeal, RCA argued the trial court was correct because a termination based on privilege is a procedural or technical termination rather than one that substantively evaluated the merits of the alleged wrongfulness of the defendant's conduct. (Berman v. RCA Auto Corp., supra, 177 Cal.App.3d at pp. 322-323, 222 Cal.Rptr. 877.) The Berman court rejected RCA's argument, reasoning that although the privilege is similar to a procedural defense to the extent it must be raised by the defendant, it is substantive because:
"The privilege is a limitation upon liability. [Citation.] When a publication is absolutely privileged, there is no liability, even though it is made with actual malice .... [¶] ... [T]he absolute protection from liability it provides makes the privilege quite unlike the procedural defenses. Procedural defenses are designed to protect the integrity of the judicial system; they are rules by which lawsuits are tried. Procedural defenses do not absolutely shield a defendant from liability.... [¶][The s]ection 47, subdivision 2, privilege, on the other hand, creates an immunity. [Citation.] It is a bar to liability designed to protect the rights of the individual speaker, to insure that nothing will impede the individual's access to the courts. The privilege focuses not on the timing or the manner of a lawsuit, but solely on the defendant.... [¶] ... In this instance the termination reflects the opinion of the Legislature that the action lacks merit because the protection of the right of an individual's access to the courts outweighs an individual's right to a civil remedy for harm resulting from misrepresentations made at a judicial proceeding .... The Legislature has in effect said that suits based on privileged statements *437 are suits ... without merit." (Berman, supra, at pp. 324-325, [222 Cal.Rptr. 877].)
With this background, we examine Hall's application of the favorable termination element of a malicious prosecution action.

Hall v. Harker
In Hall, the defendant in the underlying action prevailed against the underlying plaintiffs claim for breach of an oral contract because the parol evidence rule and statute of frauds barred the plaintiff from establishing the oral contract.[6] The underlying defendant then sued for malicious prosecution, and the trial court found the favorable termination element was satisfied. (Hall, supra, 69 Cal.App.4th at pp. 840-841, 82 Cal.Rptr.2d 44.) The Hall court reversed, concluding the parol evidence rule was a procedural rather than substantive rule that did not relate to the merits of defendant's innocence of or responsibility for the alleged misconduct.[7] (Id. at pp. 844-845, 82 Cal.Rptr.2d 44.) The Hall court discussed the parol evidence rule at length, noting:
"The parol evidence rule ... is problematic because it is not merely a rule of evidence exclusion based on policy or probative value, but is a substantive rule of law. [Citation.] `The rule derives from the concept of an integrated contract. When the parties to an agreement incorporate the complete and final terms of the agreement in a writing, such an integration in fact becomes the complete and final contract between the parties. Such a contract may not be contradicted by evidence of purportedly *438 collateral agreements.' [Quoting Hayter Trucking, Inc. v. Shell Western E & P, Inc. (1993) 18 Cal.App.4th 1, 14, [22 Cal.Rptr.2d 229].] [Citations.] The purpose of the parol evidence rule `is to make sure that the parties' final understanding, deliberately expressed in writing, shall not be changed.' (2 Witkin, Cal. Evidence [(3d ed. 1986)] Documentary Evidence, § 964, p. 912.) `According to this substantive rule of law, when the parties intend a written agreement to be the final and complete expression of their understanding, that writing becomes the final contract between the parties, which may not be contradicted by even the most persuasive evidence of collateral agreements. Such evidence is legally irrelevant. [Citations.]' (EPA Real Estate Partnership v. Rang (1992) 12 Cal.App.4th 171, 175, [15 Cal.Rptr.2d 209])" (Hall, supra, at p. 844.)
After this lengthy discourse recognizing the parol evidence rule constitutes a rule of substantive law, the purpose of which is to ensure that a deliberate expression in writing of the parties' final agreement is the final contract and may not be contradicted by even the most persuasive evidence of a different agreement, Hall nevertheless concluded a termination based on the substantive bar of the parol evidence rule is not "a legal determination of the [underlying] defendant's culpability." (Hall, supra, 69 Cal.App.4th at p. 845, 82 Cal.Rptr.2d 44.) Hall's rationale[8] for this conclusion was that the parol evidence rule may "render[ ] evidence of collateral agreements legally irrelevant, [but] it cannot erase the existence of the agreements ...." (Hall, at p. 845, original italics.)

Evaluation
We disagree with Hall's analysis and holding because we conclude that, when an action is terminated because the parol evidence rule mandates the defendant's liability be determined by the provision embodied in the written contract rather than by any prior inconsistent oral promises, the action has been terminated for reasons that do reflect on the merits of the plaintiffs underlying claim that the underlying defendant was responsible or liable for allegedly breaching his contractual obligations. The court in Estate of Gaines (1940) 15 Cal.2d 255, 100 P.2d 1055, discussing the purpose and effect of the parol evidence rule, explained:
"The parol evidence rule, as is now universally recognized, is not a rule of evidence but is one of substantive law. It does not exclude evidence for any of the reasons ordinarily requiring exclusion, based on the probative value of such evidence or the policy of its admission. The rule as applied to contracts is simply that as a matter of substantive law, a certain act, the act of embodying the complete terms of an agreement in a writing (the `integration'), becomes the contract of the parties. The point then is, not how the agreement is to be proved, because as a matter of law the *439 writing is the agreement.... The rule comes into operation when there is a single and final memorial of the understanding of the parties. When that takes place, prior and contemporaneous negotiations, oral or written, are excluded; or, as it is sometimes said, the written memorial supersedes these prior or contemporaneous negotiations." (Estate of Gaines, supra, at pp. 264-265, 100 P.2d 1055, original italics.)
Gaines makes clear that the parol evidence rule is not an evidentiary rule but is instead a rule that fixes duties and establishes rights and responsibilities among persons by declaring that the law will hold parties to their written agreements rather than to prior representations or promises inconsistent with the written agreement.[9] The parol evidence rule, like the absolute privilege evaluated by Berman, supra, concedes the statements may have been made but substantive considerations make them not actionable as a matter of law. We conclude, for reasons analogous to those articulated by Berman, when an underlying defendant is exonerated from liability by the preclusive effect of the parol evidence rule, the termination is not one based on procedural or technical rules relating to the manner for exercising or enforcing substantive rights, but is instead a termination on the merits based on a rule that fixes duties and establishes rights. (See fn. 7, ante.)

B. The Trial Correct Correctly Dismissed Casa Herrera's Section 1908 Claim

Casa Herrera's Section 1908 claim sought a judgment holding Bank liable to pay all costs and attorney fees awarded to Casa Herrera by the judgment in the underlying action. The trial court rejected this claim because it construed Section 1908 as merely codifying the common law rules of res judicata. Casa Herrera argues that Section 1908, subdivision (b), by expressly allowing a court to enter a judgment against a nonparty that binds the nonparty by the underlying judgment, permits it to seek entry of judgment holding Bank liable for the underlying judgment.
Subdivision (a) of Section 1908 embodies the traditional rules of res judicata and collateral estoppel applicable to parties and their successors in interest. Subdivision (b), added by statute in 1975 (see Stats.1975, ch. 225, § 1, p. 607), extends the res judicata/collateral estoppel effect of a judgment to certain kinds of persons who were neither parties nor successors in interest, by providing:
"A person who is not a party but who controls an action ... is bound by the adjudications of litigated matters as if he were a party if he has a proprietary or *440 financial interest in the judgment or in the determination of a question of fact or of a question of law with reference to the same subject matter or transaction .... (¶) At any time prior to a final judgment ... a determination of whether the judgment ... is to be binding upon a nonparty pursuant to this subdivision ... may, on the noticed motion of any party or any nonparty that may be affected by this subdivision, be made in the court in which the action was tried or in which the action is pending on appeal. If no such motion is made before the judgment becomes final, the determination may be made in a separate action. If appropriate, a judgment may be entered or ordered to be entered pursuant to such determination." (Section 1908, subd. (b).)
Casa Herrera interprets the last sentence of subdivision (b), which allows a new judgment to be entered in a separate action that makes certain nonparties bound by the adjudications of matters litigated in the underlying judgment, to permit a court to hold Bank liable for the judgment if Casa Herrera establishes Bank had the requisite control of and proprietary or financial interest required by subdivision (b). Bank argues the plain language of the statute does not permit a court to impose liability for the underlying judgment on nonparties, but permits a court to give only res judicata/collateral estoppel effect to the underlying judgment against qualified nonparties.
When construing a statute, we look first to the language of the statute itself, and its plain meaning controls unless the words are ambiguous. (White v. Ultramar, Inc. (1999) 21 Cal.4th 563, 572, 88 Cal.Rptr.2d 19, 981 P.2d 944.) Section 1908, subdivision (b) expressly describes by what a nonparty may be held bound under the statute"adjudications of litigated matters"and nowhere states a court may enter a judgment holding a nonparty liable for satisfaction of the underlying judgment.
Even assuming the statute contains some residual ambiguity, the application of traditional rules of statutory construction undermine Casa Herrera's interpretation of Section 1908, subdivision (b). First, although California's statutes contain over 10,000 places where the Legislature employed the terms liable or liability, Section 1908, subdivision (b) does not employ either term. "It is a well recognized principle of statutory construction that when the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded." (Ford Motor Co. v. County of Tulare (1983) 145 Cal.App.3d 688, 691, 193 Cal.Rptr. 511.) Because the Legislature has shown it is able to describe an intent to impose liability if that is its intention, and chose not to employ that language here, we should not under the guise of interpretation interject that term into Section 1908.
Second, the Legislative Counsel's Digest to Assembly Bill No. 940 shows the addition of subdivision (b) to Section 1908 was intended to codify the principles of res judicata expressed in Section 84 of the Restatement of Judgments. (See Victoria Groves Five v. Chaffey Joint Union High Sch. Dist. (1990) 225 Cal.App.3d 1548, 1555, 276 Cal.Rptr. 14 ["The Legislative Counsel's Digest is a proper resource to determine the intent of the Legislature."]) Although Section 84 of the Restatement of Judgments permits a court to extend the preclusive effect of adjudications of litigated matters in the underlying proceedings to bind certain nonparties, Casa Herrera cites no authority that has employed its principles to enter a judgment holding the nonparty monetarily liable for satisfaction *441 of the underlying judgment.[10] To the contrary, in Krofcheck v. Ensign Co. (1980) 112 Cal.App.3d 558, 169 Cal.Rptr. 516, the court rejected an analogous effort to employ the principles of Section 84 of the Restatement of Judgments to hold a partner personally liable for satisfaction of a judgment entered against the partnership in Utah. After first noting that Utah and California law were in accord that a judgment against a partnership is not enforceable against the personal assets of a partner who was not a party to the action, the court then rejected the claim that Section 84 of the Restatement of Judgments permitted the judgment creditor to hold the partner liable for satisfaction of the underlying judgment. (Id. at pp. 564-568, 169 Cal.Rptr. 516.) Other courts have agreed with this construction of Section 84 of the Restatement of Judgments. (See Valley Nat. Bank of Arizona v. A.E. Rouse & Co. (9th Cir.1997) 121 F.3d 1332, 1337.) We conclude that Section 1908, subdivision (b), which codifies the principles of Section 84 of the Restatement of Judgments, may not be used to hold the controlling nonparty personally liable for the underlying judgment.

DISPOSITION
The judgment dismissing the complaint is reversed. The order granting Bank's motion for judgment on the pleadings directed at Casa Herrera's cause of action under Section 1908 is affirmed. However, the court is directed to enter an order denying the motion for judgment on the pleadings directed at Casa Herrera's malicious prosecution causes of action. Each party shall bear its own costs on appeal.
WE CONCUR: NARES, Acting P.J., and McINTYRE, J.
NOTES
[1] The final written agreement included a warranty that the oven would produce 1500 dozen tortillas per hour of the heavier 10-ounce tortillas, 1800 dozen tortillas per hour of the lighter 8-ounce tortillas, and 2000 dozen tortillas per hour of the lightest 6-ounce tortillas. (Beydoun v. Casa Herrera, supra, D030061.)
[2] Am Mex claimed the oven was not performing satisfactorily when it signed the acceptance, but it nevertheless signed the acceptance because Casa Herrera (1) threatened to repossess the oven if Am Mex did not sign the acceptance, and (2) assured Am Mex that if it signed the acceptance Casa Herrera would modify the oven to enable it to produce a 16-ounce tortilla at the 1500 dozen per hour rate. (Beydoun v. Casa Herrera, supra, D030061.)
[3] The receiver ultimately sold Am Mex's assets to Circle Foods. The parties disputed whether the assets conveyed to Circle Foods included Am Mex's chose in action against Casa Herrera. (Beydoun v. Casa Herrera, supra, D030061.)
[4] Beydoun separately asserted claims for breach of contract and fraud alleging he was the guarantor of Am Mex's debt and that Casa Herrera's misfeasance damaged Beydoun because Am Mex's default on the loans left him liable on the guarantee. (Beydoun v. Casa Herrera, supra, D030061.)
[5] Casa Herrera also alleged that the trial court's ruling in the underlying action satisfied the favorable termination element of the malicious prosecution claims. However, that ruling dismissed the underlying action because it concluded that neither Beydoun nor Am Mex had standing to sue for fraud or breach of contract (Beydoun v. Casa Herrera, supra, D030061), and it is questionable whether a dismissal based on lack of standing would support the favorable termination element of malicious prosecution. (See Robbins v. Blecher (1997) 52 Cal.App.4th 886, 894-895, 60 Cal.Rptr.2d 815.) It is unnecessary to evaluate this issue because the appellate opinion, not the trial court ruling, controls the issue of favorable termination. (Ray v. First Federal Bank (1998) 61 Cal.App.4th 315, 318-320, 71 Cal.Rptr.2d 436.)
[6] The plaintiff's underlying claim asserted that, although his written contract of employment with the defendant contained an agreement to pay him a base salary plus a commission for each unit sold, the defendant also orally agreed to pay him a 2 percent bonus commission for sales. (Hall, supra, 69 Cal. App.4th at p. 839, 82 Cal.Rptr.2d 44.)
[7] Hall also concluded that termination based on noncompliance with the statute of frauds is not a favorable termination. Although it is unnecessary to resolve this issue, this conclusion appears open to substantial doubt. Hall's only analysis was that "[t]he statute of frauds is clearly a procedural defense. It renders certain types of contracts unenforceable, not invalid, unless they are reduced to writing and signed by the party to be charged." (Hall, supra, 69 Cal.App.4th at p. 844, 82 Cal.Rptr.2d 44.) However, there is no California authority addressing whether a termination based on noncompliance with the statute of frauds is or is not a favorable termination, and the only out-of-state authority of which we are aware holds it is a favorable termination for purposes of a malicious prosecution claim. (See Ellman v. McCarty (1979) 70 A.D.2d 150, 420 N.Y.S.2d 237, 241; Chappelle v. Gross (1966) 26 A.D.2d 340, 274 N.Y.S.2d 555, 559.) Additionally, Hall's peremptory classification of the statute of frauds as a procedural defense provides no analytic assistance because [s]ubstance" and "procedure" ... are not legal concepts of invariable content' [citations], and a statute or other rule of law will be characterized as substantive or procedural according to the nature of the problem for which a characterization must be made." (Grant v. McAuliffe (1953) 41 Cal.2d 859, 865, 264 P.2d 944.) We also question Hall's determination that the statute of frauds is a procedural defense because, "`[a]s a general rule, laws [that] fix duties, establish rights and responsibilities among and for persons, natural or otherwise, are "substantive laws" in character, while those [that] merely prescribe the manner in which such rights and responsibilities may be exercised and enforced in a court are "procedural laws."'" (Vienna v. California Horse Racing Bd. (1982) 133 Cal.App.3d 387, 394, 184 Cal.Rptr. 64.) Under Vienna's dichotomy, the statute of frauds fixes duties and establishes rights and responsibilities among and for persons by making unenforceable certain kinds of contracts absent compliance with the statute. We therefore question Hall's apparent conclusion that a contract can be unenforceable under the statute of frauds but nevertheless be valid.
[8] As additional justification for its conclusion, Hall cited the laudable policy cautioning against creating or expanding derivative tort remedies. (Hall, supra, 69 Cal.App.4th at p. 845, 82 Cal.Rptr.2d 44; see also Brennan v. Tremco Inc. (2001) 25 Cal.4th 310, 314, 105 Cal.Rptr.2d 790, 20 P.3d 1086.) However, we do not perceive that our analysis expands derivative tort remedies. Instead, we merely conclude that when a defendant has prevailed on a contract claim because substantive law declares the written contract to be controlling, that determination is within the existing requirement that the "termination must reflect on the merits of the underlying action." (Lackner v. LaCroix, supra, 25 Cal.3d at p. 750, 159 Cal.Rptr. 693, 602 P.2d 393, original italics.)
[9] For this reason, the court in Tahoe National Bank v. Phillips (1971) 4 Cal.3d 11, 92 Cal. Rptr. 704, 480 P.2d 320 concluded that, even if a party does not object at trial to evidence violating the parol evidence rule, he does not waive his right to argue on appeal that parol evidence should be disregarded when evaluating whether substantial evidence supported the judgment. After citing Gaines with approval, the Tahoe National Bank court reasoned: "If we treat the parol evidence rule as one of substantive law, we cannot consistently subjugate that rule to the principles of objection and waiver codified in the Evidence Code. (Evid.Code, § 353.) To be sure, a party who has not objected to the introduction of extrinsic evidence cannot complain if that evidence is considered by the trier of fact. But in determining whether substantial evidence supports a judgment, extrinsic evidence inconsistent with any interpretation to which the instrument is reasonably susceptible becomes irrelevant; as a matter of substantive law such evidence cannot serve to create or alter the obligations under the instrument. Irrelevant evidence cannot support a judgment." (Tahoe National Bank, at pp. 23-24, 92 Cal.Rptr. 704, 480 P.2d 320, fn. omitted.)
[10] Casa Herrera does cite numerous cases holding a court has inherent power to amend its judgments to add a new person or entity as an additional judgment debtor. However, those cases involved facts in which the originally named defendant and the new party were alter egos (NEC Electronics Inc. v. Hurt (1989) 208 Cal.App.3d 772, 778, 256 Cal.Rptr. 441) or where there was a misnomer (see Can v. Barnabey's Hotel Corp. (1994) 23 Cal. App.4th 14, 20, 28 Cal.Rptr.2d 127), and the amendment was based on the court's inherent power under Code of Civil Procedure section 187 to amend its judgment at any time to properly designate the real defendants. (Hall, Goodhue, Haisley & Barker, Inc. v. Marconi Conf. Center Bd. (1996) 41 Cal.App.4th 1551, 1555, 49 Cal.Rptr.2d 286.) Casa Herrera did not plead facts demonstrating either that Bank was the alter ego of Am Mex or that there was a misnomer, and therefore its case citations are not helpful to the issue presented here.