117 Cal.Rptr.2d 532 (2002)
96 Cal.App.4th 995
Robert J. HEENAN et al., Plaintiffs and Appellants,
v.
Mansour SOBATI et al., Defendants and Respondents.
No. G028961.
Court of Appeal, Fourth District, Division Three.
March 7, 2002.
*533 Phillip K. Fife, Seal Beach, for Plaintiffs and Appellants.
Law Offices of Paul J. Coony, Playa Del Rey, and Michael P. Ong, for Defendants and Respondents.

OPINION
SILLS, P.J.
This appeal arises from an arbitration award issued by a sitting superior court judge who conducted a "binding judicial arbitration" pursuant to stipulation. The dispute involves an ambiguity whether the judge intended to include attorney fees as part of his cost award. No fees were included in the order confirming the arbitration award.
But we are concerned with a more fundamental issue: May a sitting superior court judge conduct a private arbitration subject to confirmation under the California Arbitration Act? The answer clearly is no. Notwithstanding the parties' characterization, the "arbitration" was nothing more than a bench trial, where the judge acted in his capacity (and subject to all his obligations) as a judicial officer. There is nothing to be confirmed except this bedrock principle: Public judges must engage in public judging.

*534 I
In July 1998, plaintiffs Robert and Mary Heenan hired defendant Mansour Sobati to act as a general contractor to remodel their Seal Beach home.
The job was a nightmare. After a year, the Heenans fired Sobati and sued him in contract and tort. He cross-complained for some $100,000 in unpaid contractor's fees.
In mid-August 2000, the parties answered ready for trial before Judge H. Warren Siegel, with a 10-day time estimate. After some prodding by the court ("[e]very bit of time you spend getting this case ready where it should have been ready Friday afternoon goes against your ten days"), the parties agreed to submit their dispute to binding arbitration before a sitting superior court judge, to be assigned by the master calendar judge. The parties expressly waived a court reporter and any right to appeal.
The agreement stated: "WHEREAS the parties to this action, by and through their undersigned counsel, recognize the benefit graciously extended by the Court [Judge Siegel] ... with respect to court binding arbitration by a judicial officer of this matter ... [t]he undersigned counsel, on behalf of their respective clients, ratify and confirm the stipulation on the record ... wherein the Parties, by their own testimony and acknowledgment, waived jury trial, court reporter, and the right to appeal, and elected to avail themselves of the benefit of judicial binding arbitration, graciously extended by the Court...." (Italics added.)
The "judicial binding arbitration" (before Judge David T. McEachen) took six days. Both sides filed briefs. On September 21, 2000, Judge McEachen mailed (but did not file) a 24-page written arbitration decision, entitled "Final Binding Award of Arbitration." The Heenans were awarded $70,000 to compensate for "the reasonable cost of remedial work done and yet to be done to correct and complete deficiencies in the original work...." They also were awarded "costs" as prevailing parties.[1]
In November 2000, the Heenans filed a petition for judgment to confirm the arbitration award under Code of Civil Procedure section 1285. They also filed a memorandum of costs of $3,569. And relying upon the arbitration award, they moved for an order fixing attorney fees in excess of $80,000 pursuant to Business and Professions Code section 7160 because of Judge McEachen's "implicit" findings that Sobati fraudulently induced them to enter into a home improvement contract.[2]
*535 Sobati opposed the fee request on the ground that the Heenans never requested attorney fees and represented to Judge McEachen "that they were not seeking attorney's fees and no further testimony was allowed in this regard." They claimed that the determination of any claim for attorney fees was within Judge McEachen's exclusive purview, and he did not make the requisite findings.
The petition to compel was heard by Commissioner F. Latimer Gould, who entered judgment confirming the arbitration award but declined to award statutory attorney fees as costs. Commissioner Gould examined the arbitration award, noting that "it's not clear whether the arbitrator would have awarded attorney fees under [Business and Professions Code section] 7160, since this ... would require a specific finding that the plaintiffs were fraudulently induced by defendants. [¶] And there are no such fi[n]dings.... [I]n this court's opinion, they should have been addressed by Judge McEachen in a motion to correct, or clarify the award; and not by this motion. [¶] Having failed to make such motions ... plaintiffs have implicitly agreed that the award, as stated, is sufficient."
The Heenans appealed from the judgment confirming the arbitration award and from the order denying their motion for attorney fees.
None of the parties briefed the jurisdictional defects in the appeal from the confirmation proceedings before Commissioner Gould. Pursuant to Government Code section 68081, we asked for supplemental briefing on the following questions: (1) Did Judge McEachen, a sitting judicial officer, have the authority to conduct a binding arbitration as a contract arbitrator? If not, what is the validity of the subsequent proceedings on plaintiffs' motion to confirm before Commissioner Gould? (2) If Judge McEachen only had the authority to conduct a bench trial subject to a waiver of the right to appeal, do plaintiffs' remedies (if any) rest with Judge McEachen?
In response to our requests, we received detailed letter briefs from the parties, as well as a reply letter brief from the Heenans.

II
We start by dismissing a fictional creature that appears as often as reports of the Loch Ness monster: the stipulation's oxymoronic reference to "judicial binding arbitration" by a sitting judge.
There is no such statutorily created beast. (See Old Republic Ins. Co. v. St. Paul Fire & Marine Ins. Co. (1996) 45 Cal.App.4th 631, 639, 53 Cal.Rptr.2d 50 ["Like the mythical chimera, out of incongruous parts, the parties have created something which does not exist"].) Regrettably, this case provides yet another example of "incoherent hybrids and bizarre mutations of supposed agreements for judicial or contractual arbitration." (National Union Fire Ins. Co. v. Nationwide Ins. Co. (1999) 69 Cal.App.4th 709, 716, 82 Cal.Rptr.2d 16; see also Sy First Family Ltd. Partnership v. Cheung (1999) 70 Cal.App.4th 1334, 1338, 83 Cal.Rptr.2d 340 ["Since judicial review of hybrids does not exist, we must decide if the stipulation is fish or fowl . . ."].) Litigants who fashion such variants should be forewarned that the primary governing law may be the law of unintended consequences. (Id. at p. 1338, 83 Cal.Rptr.2d 340 [bemoaning "recent cases where the parties [have] agreed to a form of alternative dispute resolution without carefully considering the consequences of the agreement's terms"].)
California law provides for two kinds of arbitrationsnonbinding judicial arbitration under the Judicial Arbitration *536 Act (JAA) (Code Civ. Proc. § 1141.10 et seq.) and binding contractual arbitration under the California Arbitration Act (CAA) (Code Civ. Proc. § 1280 et seq.).[3] The two statutory schemes are "mutually exclusive and independent of each other." (Code Civ. Proc. § 1141.30.) In contrast to contractual arbitration, judicial arbitration is not arbitration at all, since it does not result in a final decision, there is full and complete discovery, the arbitrator is required to follow the facts and the law, and the parties may ask for a trial de novo. (See Mercury Ins. Group v. Superior Court (1998) 19 Cal.4th 332, 344-345, 79 Cal.Rptr.2d 308, 965 P.2d 1178.)[4]
The parties do not contend that they stipulated to judicial arbitration by Judge McEachen under the JAA. Did they stipulate to contractual arbitration by him under the CAA? Their conduct in invoking the CAA's confirmation proceedings certainly indicates this intent. But, as we explain, stipulations to invoke the CAA cannot stand as to sitting judges. (Elliott & Ten Eyck Partnership v. City of Long Beach (1997) 57 Cal.App.4th 495, 67 Cal. Rptr.2d 140.)
Contractual arbitration takes place outside the legal system without any expectation of further contact with the courts. (Blanton v. Womancare, Inc. (1985) 38 Cal.3d 396, 402, fn. 5, 212 Cal. Rptr. 151, 696 P.2d 645.) To avoid delays and endless layers of litigation, the arbitrator's decision (even if erroneous) is intended to function as the "end, not the beginning, of the dispute." (Moncharsh v. Heily & Blase (1992) 3 Cal.4th 1, 10, 10 Cal.Rptr.2d 183, 832 P.2d 899.) The parties are deemed to have consensually accepted "the bad"a "somewhat `roughshod'" procedurewith "the good""relatively quick and inexpensive" proceedings. (Brennan v. Tremco, Inc., supra, 25 Cal.4th at pp. 316-317, 105 Cal. Rptr.2d 790, 20 P.3d 1086.)
Judicial involvement in contractual arbitration is limited to the award enforcement process. (Dodd v. Ford (1984) 153 Cal.App.3d 426, 432, 200 Cal. Rptr. 256.) That is why contractual arbitration awards are not automatically accorded preclusive effect in favor of strangers to the litigation. (Vandenberg v. Superior Court (1999) 21 Cal.4th 815, 88 Cal.Rptr.2d 366, 982 P.2d 229.) "The very fact that arbitration is by nature an informal process, not strictly bound by evidence, law, or judicial oversight, suggests reasonable parties would hesitate to agree *537 that the arbitrator's findings in their own dispute should thereafter bind them in cases involving different adversaries and claims.... [¶] Moreover, because private arbitration does not involve the use of a judge and a courtroom, later relitigation does not undermine judicial economy by requiring duplication of judicial resources to decide the same issue." (Id. at pp. 832-833, 88 Cal.Rptr.2d 366, 982 P.2d 229.)
In Rifkind & Sterling, Inc. v. Rifkind (1994) 28 Cal.App.4th 1282, 33 Cal. Rptr.2d 828, the court stressed the private nature of these proceedings in affirming a punitive damage award assessed in a contractual arbitration between sophisticated business people. The constitutional requirement of post-judgment judicial review of punitive awards did not apply because "[t]he arbitration in this case ... was not state action. It was a private proceeding, arranged by contract, without legal compulsion. It was intended to provide a simple, final dispute resolution mechanism, independent of legal or court proceedings. ..." (Id. at p. 1291, 33 Cal.Rptr.2d 828.)
As a sitting judge, Judge McEachen cannot conduct a contractual arbitration. Public judging operates in the public eye, with reported proceedings and under appellate review, to both dispense justice and "`satisfy the appearance of justice.'" (TJX Companies, Inc. v. Superior Court (2001) 87 Cal.App.4th 747, 754, 104 Cal. Rptr.2d 810; see also Titmas v. Superior Court. (2001) 87 Cal.App.4th 738, 741, 104 Cal.Rptr.2d 803 ["We do not subscribe to the obscurantist notion that justice, like wild mushrooms, thrives on manure in the dark"]; Rose v. Superior Court. (2000) 81 Cal.App.4th 564, 572, 96 Cal.Rptr.2d 843 ["The lifeblood of our judicial institutions depends upon judges rendering decisions that are the product of a reasoned and objective view of the law and the facts"]; Mediterranean Constructimi Co. v. State Farm Fire & Casualty Co. (1998) 66 Cal. App.4th 257, 264, 77 Cal.Rptr.2d 781 [discussing the "public visibility and accountability of the judicial process. A court should not only `be fair to all litigants; it must also appear to be so'"].)
These distinctions blur if sitting judges, their salaries paid by the state, conduct private, binding arbitrations in the public's courthousesshielded from the need to follow established rules of law or to justify their decisions by reason, evidence and precedent. (See Panico v. Truck Ins. Exchange (2001) 90 Cal.App.4th 1294, 1296, 109 Cal.Rptr.2d 638 [criticizing "`unusual and unorthodox'" procedure of summary bench adjudications based on offers of proof]; In re Marriage of Hall (2000) 81 Cal.App.4th 313, 319-320, 96 Cal.Rptr.2d 772 [decrying "all-too-common" practice for family law practitioners to "disappear" into unreported chambers conferences to obtain crucial rulings]; Lokeijak v. City of Irvine (1998) 65 Cal.App.4th 341, 76 Cal. Rptr.2d 429 [invalidating local rules which discourage summary judgment motions].) The California Constitution wisely prohibits a judge from accepting public employment other than as a judge. (Cal. Const., art. VI, § 17; see also Vandenberg v. Superior Court, supra, 21 Cal.4th at p. 833, 88 Cal.Rptr.2d 366, 982 P.2d 229 ["private arbitration does not involve the use of a judge and a courtroom"].)
For these reasons, in Elliott & Ten Eyck Partnership v. City of Long Beach, supra, 57 Cal.App.4th 495, 67 Cal.Rptr.2d 140, the court refused to restrict a sitting judge to the limited powers of private contract arbitrators, who cannot subsequently modify their awards. While the judge referred to himself as an arbitrator, he actually conducted a bench trial and continued at all times to act in his official capacity as a judicial officer. "He was, in *538 short, acting as a judicial officer trying a case. As such, he was bound to . . . follow statute and decisional law in deciding matters submitted to him for decision. Indeed, we doubt that the parties could, by stipulation, free Judge Charvat from following the law and acting as a judge trying a case.... [¶] ... [¶] As a judicial officer, Judge Charvat was free to issue a decision and to change it before it became final. [Citation.] That is what he did." (Id. at pp. 504-505, 67 Cal.Rptr.2d 140.)
As Elliott holds, nomenclature is not controlling. The fact that the parties, Judge McEachen and Commissioner Gould referred to this as an "arbitration" does not make it so. "The proceedings were not those of contract arbitration, subject to the Act, but rather those of a bench trial subject to the waivers of the parties (chiefly the right to appeal)...." (Elliott, supra, 57 Cal.App.4th at p. 505, 67 Cal.Rptr.2d 140; see also City of Shasta Lake v. County of Shasta (1999) 75 Cal.App.4th 1, 11, 88 Cal.Rptr.2d 863 [parties'"arbitration agreement" construed to call for bench trial by temporary judge, subject to right to appeal].)
We follow Elliott and hold that Judge McEachen conducted a bench trial in which the parties waived a court reporter and the right of appeal. Courts will dismiss appeals brought by parties who have signed a written agreement expressly waiving the right to appellate review. (Pratt v. Gursey, Schneider & Co. (2000) 80 Cal.App.4th 1105, 1110, 95 Cal.Rptr.2d 695 ["The broad language utilized by the parties constitutes a waiver of the right to appeal from `any judgment' or `any order' "]; Elliott, supra 57 Cal.App.4th at p. 504, 67 Cal.Rptr.2d 140 ["But the parties can agree to waive some normal trial procedures, such as having a reporter's record of the proceedings, and the right to appeal"].)[5]
Following our invitation for supplemental briefing, the parties now agree that their stipulation effectively empowered Judge McEachen to conduct a bench trial to resolve their dispute with finality and without the possibility of appeal. But no one claims that Judge McEachen himself engaged in a judicial act that satisfies the criteria for a judgment. Instead, that action was left for Commissioner Gould.
Since Judge McEachen acted in his official capacity as a judicial officer trying this case, there was no "arbitration" award for Commissioner Gould to confirm. (Old Republic Ins. Co. v. St. Paul Fire & Marine-Ins. Co., supra, 45 Cal.App.4th 631, 638, 53 Cal.Rptr.2d 50 [parties cannot stipulate to cut out trial judge as middleman and head directly to the Court of Appeal]; Crowell v. Downey Community Hospital Foundation (2002) 95 Cal.App.4th 730, 115 Cal. *539 Rptr.2d 810 [parties cannot guarantee right to judicial review of contractual arbitration award for errors of law or lack of adequate supporting evidence].) Commissioner Gould had no authority to "confirm" any order issued by Judge McEachen as a result of the bench trial conducted before him. The power to issue a judgment, and to correct or modify it on post-trial review, rests with Judge McEachen. The judgment and order on the Heenans' motion to confirm the arbitration award are invalid.

III
The Heenans ask us to uphold Commissioner Gould's ruling on the petition to confirm by construing him as a successor judge who engaged in the ministerial act of entering judgment for the "unavailable" Judge McEachen. They argue that "[w]hen a judge tries a case and issues a statement of decision, but becomes thereafter unavailable to sign the judgment consistent with his written statement of decision, another judge can step in and enter a formal judgment." At the same time (and notwithstanding Judge McEachen's supposed unavailability) they urge us to "place this case back on Judge McEachen's docket" to determine their entitlement to attorney fees.
We cannot take so many shortcuts. Under Code of Civil Procedure section 635, presiding judges or their designee may sign a judgment "[i]n all cases where the decision of the court has been entered in its minutes, and when the judge who heard or tried the case is unavailable. ..." This case fits neither criterion. Judge McEachen's statement of intended decision was never filed or entered into the court minutes as required by rule 232 of the California Rules of Court.[6] In Raville v. Singh (1994) 25 Cal.App.4th 1127, 1133, 31 Cal. Rptr.2d 58, the appellate court reversed a judgment signed by the supervising judge after the trial judge died before ruling on objections to a proposed statement of decision. Although a minute order was entered reflecting the trial judge's oral statement of tentative decision, there was no "finalized" decision "entered in the minutes, as contemplated by [Code of Civil Procedure] section 635...." (Ibid.)
Further, nothing in the record indicates that Judge McEachen was incapacitated to act or otherwise unavailable. To the contrary, the only reason that Commissioner Gould entered the picture was because of the universal misperception that Judge McEachen was acting as a contract arbitrator, and could not amend, modify, supplement, change or confirm his own arbitration award. (Code Civ. Proc., §§ 1284, 1286.6.) No one (including Judge McEachen) apparently believed that his statement of decision was tentative only and "shall not constitute a judgment and shall not be binding on the court." (Cal. Rules of Court, rule 232.) No one apparently *540 understood that the procedure outlined in rule 232 applied to this case. In acting as a judicial officer rather than a contract arbitrator, Judge McEachen was "free to issue a decision and to change it before it [becomes] final." (Elliott & Ten Eyck Partnership v. City of Long Beach, supra, 57 Cal.App.4th at p. 505, 67 Cal.Rptr.2d 140.)
Even the Heenans contend that Judge McEachen's decision requires further interpretation. They reason that the arbitration award "established the basis" for them to claim statutory attorney fees under Business and Professions Code section 7160 and that they only seek to "implement" the court's "intent."
This is a matter for Judge McEachen to determine. (Kohlstedt v. Hauseur (1937) 24 Cal.App.2d 60, 62, 74 P.2d 314 ["It is for the judge who made the original decision to decide whether the judgment as written expresses his decision"].) He is familiar with the facts and law of this case. Given the fact that the parties have waived their appeal rights, it is especially critical to have an informed decisionmaker at the trial court level "`rather than by one totally unfamiliar with such facts and who has made no special study of the law applicable to those facts....'" (Abbott v. Mandiola (1999) 70 Cal.App.4th 676, 682, 82 Cal.Rptr.2d 808 [sanctions motion should be heard by same judge who granted mistrial].) By reason of his all-purpose assignment to conduct this bench trial in totality, Judge McEachen should have the last judicial wordnot Commissioner Gould.
In Armstrong v. Picquelle (1984) 157 Cal.App.3d 122, 203 Cal.Rptr. 552, the court reversed a judgment that was signed by a successor judge following the retirement of the trial judge who had issued a tentative decision. Armstrong stressed the importance of having "`the judge who hears the evidence ... decide the case.'" (Id. at p. 128, 203 Cal.Rptr. 552.)
We are cognizant of the fact that we are reversing a money judgment (on Commissioner Gould's order to confirm) from which only the Heenans, not Sobati, has appealed. In their reply letter brief, the Heenans contend that Sobati should be estopped from challenging any issues concerning a judgment which he has not challenged and which he may already have paid. We leave such unbriefed issues (and related matters such as the accrual of interest on this unchallenged sum during the pendency of the instant appeal) for Judge McEachen to determine upon remand.
We remand with directions that the trial court vacate the void judgment and order under the California Arbitration Act and transfer the matter to Judge McEachen for all further proceedings, including the entry of judgment, and any postjudgment matters concerning costs and attorney fees. Costs on appeal are awarded to appellants.
WE CONCUR: RYLAARSDAM, and O'LEARY, JJ.
NOTES
[1] The opinion castigated Sobati for the "catastrophe" and the "disaster" he inflicted upon the Heenans: "This case is the classic example of an alleged contractor trying to pull off a job in which he was not qualified to do." Judge McEachen specifically found that Sobati performed poor work and misrepresented his qualifications. He used pick-up laborers rather than licensed specialty subcontractors, and left hazardous asbestos debris on the worksite. He had no general contractor's license and "[h]is workmanship showed that he would probably not pass the contractor's license test himself." Instead, his company "rented" an inactive contractor's license from an elderly woman who had nothing to do with the project. Despite these findings, Judge McEachen declined to order Sobati to pay restitution to the Heenans for the $225,370 in payments already made: "[T]he court does not find the bad faith fraud tantamount to ordering restitution.... The proper measure of damages in this case is that [ ] amount which will compensate the Heenans for the shoddy work performed by defendants, not restitution, in addition."
[2] Business and Professions Code section 7160 allows courts to award attorney fees in addition to damages to "[a]ny person who is induced to contract for a work of improvement ... in reliance on false or fraudulent representations or false statements knowingly made ... by the contractor or solicitor."
[3] Contractual arbitration also has been called "private," "general" or "true" arbitration. (See e.g. Brennan v. Tremco, Inc. (2001) 25 Cal.4th 310, 315, 105 Cal.Rptr.2d 790, 20 P.3d 1086 ["private nonjudicial arbitration"]; Caro v. Smith (1997) 59 Cal.App.4th 725, 736, 69 Cal.Rptr.2d 306 ["true (or contractual) arbitration"]; Moore v. Conliffe (1994) 7 Cal.4th 634, 637, 29 Cal.Rptr.2d 152, 871 P.2d 204 ["private, contractual arbitration"]; Parker v. Babcock (1995) 37 Cal.App.4th 1682, 1686, 44 Cal.Rptr.2d 602 ["true arbitration"].) In like fashion, the CAA also has been described as the "General Arbitration Act." (In re Marriage of Assemi (1994) 7 Cal.4th 896, 916, 30 Cal. Rptr.2d 265, 872 P.2d 1190, dis. opn. of Mosk, J.)
[4] Judicial arbitration awards may become binding upon parties who accept them as final by not filing a timely request for trial de novo. (Code Civ. Proc., § 1141.20.) Alternatively, participants in a judicial arbitration may stipulate to waive their right to trial de novo, thereby triggering the automatic entry of judgment (Code Civ. Proc., § 1141.20, subd. (a)) without requiring a motion to confirm the arbitration award as exists under the CAA. (See Porreco v. Red Top RV Center (1989) 216 Cal.App.3d 113, 119, 264 Cal.Rptr. 609 [stipulation for "judicial arbitration" specifically waived right to de novo trial and referenced the JAA]; Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2001) ¶ 4:48 at p. 4-11.)
[5] We recognize the potential for abuse where litigants may feel steamroller! by trial judges on the eve of trial into waiving important rights like reported proceedings and appellate review. (See Wuest v. Wuest (1942) 53 Cal. App.2d 339, 345, 127 P.2d 934 ["In making the waiver of appeal by plaintiff from any portion of the judgment the price of obtaining a judgment to which she was entitled, the trial judge materially prejudiced a substantial right belonging to plaintiff. The trial of a case should not only be fair in fact, but it should also appear to be fair, and where the contrary appears it shocks the judicial instinct and conscience to allow the judgment to stand"].)

That is why twelfth-hour waivers on the verge of unfavorable rulings merit careful scrutiny. Ill-conceived shortcuts often raise more questions than they purportedly resolve. (See, e.g., Panico v. Truck Ins. Exchange, supra, 90 Cal.App.4th at p. 1296, 109 Cal. Rptr.2d 638 ["The moral to the story is that haste makes for a lower affirmance rate"].) Since no one has raised any issue of coercion here, we do not consider the matter further beyond this cautionary admonition.
[6] Rule 232 provides, in pertinent part: "(a) On the trial of a question of fact by the court, the court shall announce its tentative decision by an oral statement, entered in the minutes, or by a written statement filed with the clerk. Unless the announcement is made in open court in the presence of all parties who appeared at the trial, the clerk shall forthwith mail to all parties who appeared at the trial a copy of the minute entry or written tentative decision. [¶] The tentative decision shall not constitute a judgment and shall not be binding on the court. If the court subsequently modifies or changes its announced tentative decision, the clerk shall mail a copy of the modification or change to all parties who appeared at the trial. [¶] The court in its tentative decision may (1) state whether a statement of decision, if requested, will be prepared by the court or by a designated party, and (2) direct that the tentative decision shall be the statement of decision unless within ten days either party specifies controverted issues or makes proposals not covered in the tentative decision." (Italics added.)