Filed 2/18/15  Donahue v. Kuntz CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SEAN DONAHUE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>DENNIS M. KUNTZ et al.,<br><br>    Defendants and Respondents. | B250943<br><br>(Los Angeles County<br>Super. Ct. No. KC048793) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  William A. MacLaughlin, Judge.  Affirmed.

Gibbs Giden Locher Turner Senet & Wittbrodt and Michael B. Geibel; Miller & Chavez and Stephen J. Miller for Plaintiff and Appellant.

Hanger, Steinberg, Shapiro & Ash, Jody Steinberg and Lisa Mead; Law Offices of Mary Jean Pedneau and William R. Larr for Defendants and Respondents.

Plaintiff and appellant Sean Donahue (plaintiff) appeals from the judgment entered in favor of defendants and respondents Dennis M. Kuntz and Alice J. Kuntz (defendants) in this action and cross-action related to a boundary dispute and plaintiff's filling and grading a portion of a natural creek in the rear of the parties' respective properties. We affirm the judgment.

## BACKGROUND

Plaintiff is the owner of certain residential real property located at 2374 North Cameron Avenue in Covina, California (the Donahue property). Defendants own the adjoining property located at 2376 North Cameron Avenue (the Kuntz property). Primary access to both properties is a private road along the south side of both parcels. At the rear of both properties is a natural creek channel.

After plaintiff purchased the Donahue property in 2003, a dispute arose between the parties concerning an existing fence that separated their two properties, the location of the legal boundary line, and plaintiff's use of a recorded easement over the Kuntz property in favor of the Donahue property. A dispute also arose over plaintiff's construction or improvement of a roadway on their property. The construction included filling in a portion of the creek channel located at the rear of the Donahue property and replacing an existing 18-inch drainage pipe and culvert in the creek channel with an 36-inch drainage pipe. The construction resulted in a substantial elevation of the roadway as it passed over the streambed, extension of the supporting slope, and subsequent erosion of the built up road bed onto the Kuntz property. Because the soil used to create the roadway was contaminated with construction debris and hydrocarbons, the project resulted in soil and contaminants being placed onto the Kuntz property. In addition, the 36-inch pipe placed in the creek bed caused some change in the streambed flow and carried some soil and contaminants downstream and onto the Kuntz property. Plaintiff's grading and filling of the creek channel and placement of the drainage pipe were done without any permits or approvals from the applicable public agencies.

2

## PROCEDURAL HISTORY

In July 2006, plaintiff filed the instant action for quiet title, adverse possession, prescriptive easement, and injunctive relief over disputed portions of the parties' respective properties. A corrected first amended complaint was filed in October 2006.

Defendants filed an answer and a cross-complaint that included causes of action against plaintiff and his parents,[1] who resided on the Donahue property, for nuisance and negligence and for damages and injunctive relief related to plaintiff's unpermitted grading and filling of the creek bed channel. Plaintiff and his parents then filed a cross-complaint against defendants, asserting causes of action for intentional and negligent infliction of emotional distress, trespass, and nuisance.

Defendants filed a motion for summary adjudication of plaintiff's quiet title claims, and the trial court granted summary adjudication in defendants' favor as to those claims.

The parties' respective liability claims were bifurcated and tried in a two-part court trial. The parties stipulated to binding arbitration of their respective damages claims.

### Phase 1 trial

Defendants' nuisance and negligence claims were tried in phase 1 of the court trial. At the conclusion of the phase 1 trial, the trial court issued a tentative statement of decision dated March 17, 2009, that was deemed the final statement of decision on April 8, 2009. In the final statement of decision, the trial court found that plaintiff's construction of the roadway and introduction of contaminated soil and fill material into the creek channel intruded upon the Kuntz property and created a nuisance within the meaning of Civil Code sections 3479 and 3481. The trial court concluded that defendants were entitled to injunctive relief requiring removal of all fill material placed on the Kuntz property, prevention of erosion onto the Kuntz property, removal of any portion of the drainage pipe and culvert from the Kuntz property, and restoration of the Kuntz property

---

[1]     Plaintiff's parents are not parties to this appeal.

3

to its condition before the roadway project commenced. The court stated that the specific form and content of the injunctive relief would be ordered when judgment was entered in the matter. The trial court further found that plaintiff was negligent because he did not sufficiently investigate the need for permits for the work performed, did not sufficiently verify the source and nature of the soil obtained to ensure that it was free of debris and contaminants, did not construct the roadway and supporting slopes in a manner that would have prevented erosion, and did not conduct the requisite survey to ensure that the improvement to the Donahue property was made entirely on that property.

**Phase 2 trial**

The second phase of the court trial addressed whether defendants had interfered with recorded easements and had trespassed onto plaintiff's property. In a statement of decision filed at the conclusion of phase 2, the trial court found that the boundaries of the properties and easements were described in the deeds to the respective properties and depicted in a topographic survey and a record of survey prepared for defendants by a registered professional engineer. The trial court further found that defendants were liable for interference with the easements and for trespass. The court stated that it would order injunctive relief, in a form and on terms to be decided when judgment was entered in the case.

**Phase 3 arbitration**

Plaintiff and defendants entered into a stipulation, signed by both the parties and their counsel, to binding arbitration of their damages claims. The stipulation provided that California law and the rules of evidence would apply and that the parties waived their right to a trial de novo as provided in rule 3.826 of the California Rules of Court.

In an amended final award filed on August 25, 2010, the arbitrator found that plaintiff's dumping of contaminated and uncompacted dirt on the rear of the Kuntz property constituted a continuing nuisance and awarded defendants $281,500 in damages on their nuisance and negligence claims. The arbitrator awarded $87,764 damages in favor of plaintiff and against defendants as follows: $47,614 for tortious interference with the driveway easement, $15,000 for negligent infliction of emotional distress,

4

$20,000 for intentional infliction of emotional distress,[2] $150 for trespass, and $5,000 for trespass against Dennis Kuntz only.

**Motions to vacate arbitration award and for a partial new trial**

On September 9, 2011, the trial court issued a proposed judgment and set the matter for an order to show cause re entry of judgment. In response, plaintiff filed, on January 6, 2012, a motion seeking to vacate the arbitration award. Plaintiff filed a separate motion for a partial new trial on injunctive relief and damages. Plaintiff argued that the arbitrator awarded excessive, duplicative damages contrary to law and that irregularity in the arbitration proceedings amounted to misconduct by the arbitrator. The motion for a new trial was limited to the issues of damages and whether the nuisance could be abated.

The trial court found that the parties had stipulated to judicial arbitration under Code of Civil Procedure section 1141.10 and had further stipulated that the arbitrator's decision would be final by waiving the right to seek a trial de novo under rule 3.826 of the California Rules of Court. In light of the parties' waiver of a right to a trial de novo, the trial court concluded the requested relief could not be granted.

The trial court denied the motion to vacate the arbitration award on the merits and as untimely under California Rules of Court, rule 3.828.

**Judgment**

Judgment was entered on July 26, 2013, and incorporated the phase 1 and phase 2 statements of decision as well as the phase 3 arbitration award. Over plaintiff's objection, the trial court applied the $87,764 damages award to plaintiff as an offset against the $281,500 award in favor of defendants, resulting in a net award to defendants of $193,736. This appeal followed.[3]

---

[2] The arbitrator also awarded plaintiff's parents $25,000 each for negligent infliction of emotional distress, and $35,000 each for intentional infliction of emotional distress.

[3] Defendants filed a cross-appeal that they subsequently abandoned.

**DISCUSSION**

Plaintiff's appeal is limited to the following portions of the judgment: (1) the injunctive order requiring plaintiff to remove all dirt fill and all portions of the pipe and culvert placed on defendants' property; (2) offset of the $87,764 damages award to plaintiff against the $281,500 award to defendants and entry of judgment in favor of defendants in the net amount of $193,736; and (3) the finding that the boundary between the parties' properties is as set forth in the Giron Record of Survey dated December 13, 2006 (the Giron survey). Plaintiff also appeals from the postjudgment order denying his motion for a partial new trial on injunctive relief and on damages and from the postjudgment order denying his motion to vacate or set aside the portion of the judgment entered on the $281,500 arbitration award in favor of defendants on their nuisance and negligence claims.

## I. Injunctive order

We review the trial court's decision to grant injunctive relief for abuse of discretion. (*Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904, 912.) We review the factual findings upon which the trial court's injunctive order is based for substantial evidence. "Under the substantial evidence standard, "'[t]he power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the trial court's findings. . . . ' [Citation.]" (*Hope v. California Youth Authority* (2005) 134 Cal.App.4th 577, 589.) All conflicts in the evidence must be resolved in favor of the prevailing party, and all reasonable inferences must be drawn in favor of the prevailing party. (*Le v. Pham* (2010) 180 Cal.App.4th 1201, 1205-1206.)

Plaintiff contends the injunctive relief granted against him was improper because there is insufficient evidence to support the finding that the contaminated soil deposited in the creek channel and encroaching upon defendants' property constitutes a continuing rather than a permanent nuisance. He argues that the condition must be deemed to be a permanent nuisance because there was no evidence that it could be abated at a reasonable

6

cost by reasonable means and that the proper remedy is damages rather than injunctive relief.

The basic distinction between a permanent nuisance and a continuing nuisance is that the latter can be discontinued or abated. (*Capogeannis v. Superior Court* (1993) 12 Cal.App.4th 668, 677.) "'[A]batable' means that the nuisance can be remedied at a reasonable cost by reasonable means." (*Mangini v. Aerojet-General Corp.* (1996) 12 Cal.4th 1087, 1103 (*Mangini*).) Abatability is a question of fact, and "cost is an appropriate factor to consider." (*Id.* at p. 1101.) A cost estimate will suffice to show abatement by reasonable means at a reasonable cost. (*Id.* at p. 1099.)

There is substantial evidence in the record that the nuisance caused by plaintiff's unpermitted grading and filling activity was abatable. Plaintiff's expert geologist and environmental manager, Sara Battelle (Battelle), testified during the phase 1 trial about the need for remediation. Battelle testified that she had reviewed cost estimates prepared by G.E. Construction Company for three remedial alternatives for the property in the vicinity of the culvert. Defendants' counsel objected on the ground that Battelle's expert designation did not "cover areas for construction type of remediation" and argued that her testimony should be limited "to remediation in the area that she's been designated . . . as an expert" -- investigation of contaminated soils in the vicinity of the culvert. The trial court overruled that objection.

Battelle then testified about three remedial alternatives proposed by G.E. Construction and their respective costs. These were (1) construction of an engineered retaining wall and replacement culvert at a cost of $326,337; (2) construction of a modular retaining wall at a cost of $255,167; and (3) construction of a 2:1 horizontal and vertical slope along the property line at a cost of $194,513. When plaintiff's counsel asked Battelle whether she had an opinion as to which of the three alternatives would be most effective in containing the soil, defendants' counsel objected that Battelle's testimony was beyond the scope of her expert designation and argued that plaintiff had offered no proof that Battelle had experience in estimating the cost of the various remedial alternatives. The trial court sustained the objection on the ground of lack of

7

foundation, and then invited plaintiff's counsel to attempt to lay the necessary foundation. After plaintiff's counsel elicited testimony from Battelle regarding her previous experience with 2:1 slopes, the trial court allowed Battelle to state her opinion that the remedial option of creating a 2:1 slope would contain the soil at the top of the slope, would "greatly improve the conditions there," and "should be sufficient."

Plaintiff argues that Battelle's testimony is not substantial evidence of the estimated cost of abatement for the following reasons: the trial court sustained defendants' objection to Battelle's testimony based on lack of foundation; Batelle had not herself prepared any repair options or cost estimates; the G.E. Construction cost estimates were not admitted into evidence and no one from G.E. Construction was called to testify regarding estimated costs; the trial court limited Battelle's testimony regarding abatement to the 2:1 slope option; and there was no testimony that the county or any other public agency would approve a permit for any of the remedial options Battelle described during her testimony.

While it is true that the trial court sustained defendants' objection to Battelle's testimony for lack of foundation, the court then allowed plaintiff's counsel to lay the necessary foundation. Plaintiff's counsel did so with regard to Battelle's experience with 2:1 slopes. Battelle's testimony regarding the 2:1 slope repair option was admissible and constitutes substantial evidence of abatability. "Substantial evidence" is evidence that is reasonable, credible, of solid value, and of ponderable legal significance. (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633.) Battelle's testimony regarding the 2:1 slope option meets these criteria.

To the extent Battelle's testimony included cost estimates that plaintiff now complains were inadmissible, that complaint is not cognizable on appeal because plaintiff's counsel elicited such testimony. Under the doctrine of invited error, "[i]f an appellant offers inadmissible matters into evidence, he cannot complain of its admission on appeal. [Citations.]" (*Horsemen's Benevolent & Protective Assn. v. Valley Racing Assn.* (1992) 4 Cal.App.4th 1538, 1555; see also *Sacramento and San Joaquin Drainage Dist. v. W. P. Roduner Cattle & Farming Co.* (1968) 268 Cal.App.2d 199, 207-210

8

[doctrine of invited error precluded appellant from arguing there was no substantial evidence to support verdict fixing the value of special benefit in condemnation action when testimony from expert witness caused the jury to be misled in measuring such value].)

The absence of evidence that the county or any other public agency would approve a 2:1 slope or any of the other remedial options described by Battelle is not relevant to the issue of whether there was substantial evidence of abatability. "'[A]batable' means that the nuisance can be remedied at a reasonable cost by reasonable means." (*Mangini, supra*, 12 Cal.4th at p. 1103.) Plaintiff cites no case authority for the proposition that public agency approval of any specific remedial option is required when determining abatability.

Substantial evidence supports the trial court's implied finding that the nuisance created by plaintiff was abatable. The trial court accordingly did not abuse its discretion by ordering injunctive relief.

Plaintiff's challenge to the factual determination that the nuisance he created was a continuing one also fails because that determination was also made by the arbitrator in the binding arbitration proceeding to which the parties stipulated. After 11 days of arbitration hearings during which witnesses for both parties testified, the arbitrator found that "[c]laimants [Sean Donahue and William Donahue] dumping of contaminated and uncompacted dirt on the rear portion of the Kuntz property . . . [¶] . . . establishes that the dirt constitutes a continuing nuisance." That factual determination by the arbitrator is not subject to judicial review. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 6 ["arbitrator's decision is not generally reviewable for errors of fact"]; *City of Palo Alto v. Service Employees Internat. Union* (1999) 77 Cal.App.4th 327, 337 [court "cannot judicially revisit" disputed fact issues].)

## II. Motion for partial new trial on damages

Plaintiff contends the issue of damages should be remanded for a new trial because the $281,500 in damages awarded by the arbitrator on defendants' nuisance and negligence claims was excessive and improperly included damages for emotional

distress, diminution in value, attorney fees and costs, loss in the value of the Kuntz property, and prospective damages for future erosion and loss of marketability of the property not recoverable under a continuing nuisance theory.

Plaintiff waived any claim to a right to a new trial on damages by expressly waiving the right to a trial de novo in the parties' stipulation for binding arbitration of the phase 3 issues. In that stipulation, the parties agreed that "Phase III of this matter shall be tried to a final conclusion as an arbitration proceeding pursuant to California Rules of Court Rules 3.811-3.830 (excluding Rule 8.26) and Code of Civil Procedure section 1141.10."

Code of Civil Procedure section 1141.10 and California Rules of Court, rules 3.811 through 3.830 govern judicial arbitration. Judicial arbitration does not necessarily result in a final decision because the parties have a statutory right to request a trial de novo. (Code Civ. Proc., § 1141.20.)[4] A judicial arbitration award becomes final and binding upon parties who accept them as final by not filing a timely request for trial de novo or by stipulating to waive the right to trial de novo. (See *Heenan v. Sobati* (2002) 96 Cal.App.4th 995, 1000-1001, fn. 4 (*Heenan*) [participants in a judicial arbitration may stipulate to waive their right to trial de novo, thereby triggering the automatic entry of judgment]; *Porreco v. Red Top RV Center* (1989) 216 Cal.App.3d 113, 119-120 [parties may stipulate to binding judicial arbitration with advance waiver of the right to request a de novo trial].) The parties in this case stipulated, individually and through their respective counsel, "that the right of either party hereto to a de novo trial as provided in Rule 3.826 of the California Rules of Court is hereby waived." Plaintiff accordingly cannot seek a partial new trial on damages.

Plaintiff contends the parties did not stipulate to binding judicial arbitration, but rather entered into a "hybrid" agreement containing provisions applicable to both a

---

**4**    Code of Civil Procedure section 1141.20 provides in part: "(a) An arbitration award shall be final unless a request for a de novo trial or a request for dismissal in the form required by the Judicial Council is filed within 60 days after the date the arbitrator files the award with the court. [¶] (b) Any party may elect to have a de novo trial, by court or jury, both as to law and facts. . . ."

10

judicial arbitration and a contractual arbitration. Such an agreement, plaintiff argues, must be construed according to ordinary rules of contract interpretation, giving paramount consideration to the parties' objective intent. That intent, plaintiff insists, was to allow the parties to challenge in the trial court errors and irregularities in the arbitration proceeding. As noted by the court in *Heenan*, California law provides for only two kinds of arbitration -- judicial arbitration under the Judicial Arbitration Act (Code Civ. Proc., § 1141.10 et seq.) and contractual arbitration under the California Arbitration Act (Code Civ. Proc., § 1280 et seq.) "The two statutory schemes are 'mutually exclusive and independent of each other.' (Code Civ. Proc., § 1141.30.)" (*Heenan, supra*, 96 Cal.App.4th at p. 1000.) Litigants who enter into "incoherent hybrids and bizarre mutations of supposed agreements for judicial or contractual arbitration" (*National Union Fire Ins. Co. v. Nationwide Ins. Co.* (1999) 69 Cal.App.4th 709, 716) "should be forewarned that the primary governing law may be the law of unintended consequences" (*Heenan, supra*, at p. 1000). In this case, however, the parties' stipulation reflects a clear intent to submit the phase 3 issues to arbitration under the Judicial Arbitration Act. The stipulation expressly references Code of Civil Procedure section 1141.10 and provisions of the California Rules of Court applicable to judicial arbitration. The parties' waiver of the right to a de novo trial did not alter the statutory scheme they had selected. (*Heenan*, at p. 1001, fn. 4.)

### III. Motion to vacate judgment based on arbitration award

Plaintiff next argues that the trial court improperly denied his motion to vacate the judgment based on the arbitration award. Although there is no right to appeal from a judgment entered on a judicial arbitration award, an appeal does lie from certain post-judgment orders, including an order denying a motion to vacate or set aside the judgment. (*Karamzai v. Digitcom* (1996) 51 Cal.App.4th 547, 549-550.) The grounds for relief are limited. Code of Civil Procedure section 1141.23 states that a judicial arbitration award "may not be attacked or set aside except as provided by [Code of Civil Procedure] section 473, 1286.2, or Judicial Council rule." The California Rules of Court governing motions to vacate a judgment entered on an arbitration award also require a party seeking relief to

11

do so within six months after entry of judgment, and further state that relief may be granted "only upon clear and convincing evidence that the grounds alleged are true, and that the motion was made as soon as practicable after the moving party learned of the existence of those grounds." (Cal. Rules of Court, rule 3.828(a), (b).)

The trial court found that plaintiff's motion to vacate the judgment was untimely under California Rules of Court, rule 3.828(b) because it was not "made as soon as practicable" after plaintiff learned of the existence of the grounds to do so. The record supports that finding. The final arbitration award was filed on August 25, 2010, and plaintiff's motion was not filed until January 6, 2012.

Plaintiff's arguments also fail on the merits. He claims that the arbitrator engaged in misconduct by improperly considering evidence of harm not recoverable under a continuing nuisance or negligence theory and that the $281,500 in damages awarded on defendants' nuisance and negligence claims improperly included damages for emotional distress, attorney fees and costs, and prospective economic losses. In the final amended award, the arbitrator awarded defendants $281,500 in damages on their negligence and nuisance claims but provided no calculations for the amount of the award, nor any allocation of the award between the nuisance and negligence claims. There is no record of the arbitration proceedings, apart from the parties' respective arbitration briefs. Given the absence of such a record, plaintiff's claims that the arbitration award improperly included attorney fees and costs or damages for emotional distress and prospective harm not recoverable under a continuing nuisance theory, are based solely on speculation, as plaintiff himself concedes in his opening appellate brief. Plaintiff's argument that the arbitrator improperly considered evidence of emotional distress is without merit. The parties submitted certain of their tort claims, including claims for intentional and negligent infliction of emotional distress, to binding judicial arbitration. The arbitrator necessarily heard evidence pertinent to those claims, and awarded defendants $1,780 in damages on their claims for conversion and for negligent and intentional infliction of emotional distress.

The trial court did not err by denying plaintiff's motion to vacate the judgment entered on the arbitration award.

## IV. Offset

Plaintiff contends the trial court erred by applying Code of Civil Procedure section 666 to offset against the $281,500 damages award in favor of defendants the $87,764 in damages awarded in favor of plaintiff. He argues that the offset was inequitable because both parties were insured,[5] and the net effect of the offset was to deny recovery to plaintiff and to use his insurance coverage to pay the damages awarded against defendants.

### A. *Applicable law and standard of review*

Code of Civil Procedure section 666 requires a setoff when a cross-complainant's recovery exceeds that of the plaintiff. It provides:

> "If a claim asserted in a cross-complaint is established at the trial and the amount so established exceeds the demand established by the party against whom the cross-complaint is asserted, judgment for the party asserting the cross-complaint must be given for the excess; or if it appears that the party asserting the cross-complaint is entitled to any other affirmative relief, judgment must be given accordingly.

> "When the amount found due to either party exceeds the sum for which the court is authorized to enter judgment, such party may remit the excess, and judgment may be rendered for the residue."

The mandatory setoff of Code of Civil Procedure section 666 ordinarily "has the salutary effects of (1) eliminating a superfluous exchange of money between mutual debtors [citation], and (2) protecting each party from the risk that the other may collect the debt owed to him or her, then default upon his or her own obligation. [Citation.] However, the benefits of setoff are sometimes outweighed by the risk of unfairness which

---

**5** Both parties were insured by the same insurer, State Farm Insurance, and were represented during the trial and the arbitration by *Cumis* counsel, independent counsel selected by the insureds but paid for by the insurer as required by Civil Code section 2860 and *San Diego Federal Credit Union v. Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358.

may be created by allowing a setoff in specific circumstances. When this is the case, in light of the equitable origin of setoff rights, such rights may be restricted by judicial limitations imposed to uphold independent state policy. [Citations.]" (*Garg v. People ex rel. State Bd. of Equalization* (1997) 53 Cal.App.4th 199, 212.)

In *Jess v. Hermann* (1979) 26 Cal.3d 131 (*Jess*), the California Supreme Court held that the mandatory setoff of Code of Civil Procedure section 666 did not apply between insured parties in comparative fault cases because a setoff of liabilities in such cases would conflict with California's financial responsibility laws and would provide an inequitable windfall to an insurance company at the expense of the insured. (*Jess, supra*, at pp. 138-143.) Because the trial court had applied the mandatory setoff of Code of Civil Procedure section 666 "without considering the potentially inequitable effect of such setoff in light of the parties' insurance coverage, apparently concluding that the existing statutory provisions dictated an automatic setoff without regard to the interests of the parties or to the equities of the situation" (*Jess*, at p. 135), the Supreme Court vacated the judgment and remanded the matter to the trial court "to permit the court to ascertain the parties' actual insurance coverage and to render an appropriate judgment in light of such coverage." (*Ibid.*)

In the instant case, the record is clear that the trial court considered the parties' respective insurance coverage and weighed the equities in determining whether to apply the statutory offset in light of the Supreme Court's decision in *Jess*. The trial court's decision was therefore one subject to an exercise of its equitable powers. We review that decision under the abuse of discretion standard. (*Wm. R. Clarke Corp. v. Safeco Ins. Co. of America* (2000) 78 Cal.App.4th 355, 359.)

### B. No abuse of discretion

The parties in the instant case were being defended, subject to a reservation of rights, by State Farm, the issuer of the parties' respective homeowner liability policies. At the time of judgment, State Farm had made no final decisions regarding what portions, if any, of the judgment would be covered. Defendants' counsel informed the trial court that State Farm had informally told defendants that any judgment against them would not

14

be covered and asked that the award totaling $87,764 against defendants be offset by the judgment against plaintiff and in their favor for $281,500. Plaintiff's counsel said that he had been informed, albeit informally, that State Farm would cover the $281,500 liability plaintiff had incurred to defendants and argued against any offset as unfair to plaintiff. Defendants' counsel argued in response that without any evidence of State Farm's agreement that the $281,500 judgment against plaintiff would be covered, plaintiff's representation regarding coverage was speculative. The trial court agreed, noting that the court did not know whether there was coverage for any of the damages "because I don't know what the insurance company's position is going to be." The court thereafter applied the offset.

The record discloses no abuse of discretion by the trial court.

## V. Property line determination

Plaintiff contends the trial court's finding that the property line between the Kuntz property and the Donahue property is as set forth in the Giron survey should be reversed. He claims the location of the true property line was not at issue in the case and that the finding should not be included in the judgment. As the trial court noted in two separate hearings on the issue, the court necessarily had to determine the location of the property line dividing the two properties in order to adjudicate the parties' claims for trespass, nuisance, and interference with a recorded easement. The Giron survey was admitted into evidence, and the trial court expressly stated that it relied on that survey when adjudicating plaintiff's easement claim. Plaintiff has established no valid basis for reversing the trial court's finding.

15

**DISPOSITION**

The judgment is affirmed.  Defendants are awarded their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
CHAVEZ

We concur:

_____, Acting P. J.
ASHMANN-GERST

_____, J.
HOFFSTADT

16